J. Irwin Shapiro, J.
On July 15, 1969, petitioner was adjudicated a youthful offender in the Criminal Court of the City of New York for having possessed hashish on November 20, 1968. On September 11,1969, he was sentenced to serve six months in the New York City Penitentiary. He now brings this habeas corpus proceeding to test the legality of the sentence imposed upon him and his incarceration thereunder.
The proceeding is apparently the first one calling for a determination of whether the amendment of section 913-m of the Code of Criminal Procedure (L. 1969, ch. 375, eff. Sept. 1, 1969) is ex post facto when a definite sentence of six months is imposed by the Criminal Court of the City of New York after the effective date of the amendment upon a youthful offender who committed the guilty act prior to the effective date of the amendment.
Up to September 1,1969, section 913-m of the Code of Criminal Procedure, so far as pertinent here, provided:
“ 1. Upon adjudication of any person as a youthful offender, the court must impose one of the following sentences prescribed by the penal law:
“ (a) A sentence of probation;
“ (b) A sentence of conditional discharge;
“ (c) A sentence of unconditional discharge; or
“ (d) A reformatory or an alternative local reformatory sentence of imprisonment.”
Since the repeal in 1967 of former article 7-A of the Correction Law (L. 1967, ch. 324), which had provided for reformatory sentences in the City of New York, no “ local reformatory sentence ’ ’ could be imposed under this statute. Thus the only reformatory sentence possible under section 913-m was to a State correctional institution. This meant a term of imprisonment of up to four years for a youthful offender convicted of an act which for an adult would constitute a misdemeanor. (Penal Law, § 75.10.)
Different from the Courts of Special Sessions and District Courts in counties other than New York, where a defendant is entitled to a jury trial (Code Crim. Pro., § 702), all trials in the Criminal Court of the City of New York are without a jury (N. Y. City Crim. Ct. Act, § 40). In May, 1968 the United States Supreme Court, in Duncan v. Louisiana (391 U. S. 145), held that the trial by jury guaranteed by the Sixth Amendment of the United States Constitution is incorporated in the Fourteenth Amendment’s mandate of due process and is therefore binding upon the States (p. 149). But the court also held that this right to a trial by jury applied only to “ serious ” crimes and not to *74 the so-called “ petty ” offenses (p. 159). Although the court in that case decided that a crime punishable by two years’ imprisonment is a serious crime and not a petty offense, the court failed to spell out specifically the difference between “ petty ” offenses and ‘ ‘ serious ’ ’ crimes, holding that ‘1 the definitional task necessarily falls on the [State] courts ’ ’ in the first instance to characterize the various crimes (p. 160).
This definitional problem was not long in turning up for adjudication. Two cases, People v. Baldwin and Matter of Hogan v. Rosenberg, which presented different phases of the problem, were argued simultaneously in the Court of Appeals (24 N Y 2d 207) on January 22, 1969.
Baldwin involved an adult charged with a misdemeanor carrying a maximum sentence of one year whose pretrial motion for a jury trial was denied. The Court of Appeals in that case merely canvassed the history of the difference between “ serious ” and “ petty crimes ” vis á vis the right to trial by jury and concluded that “ those crimes which are denominated misdemeanors in this State are not crimes to be characterized as serious and, therefore, individuals charged with such crimes need not be afforded the Sixth Amendment’s guarantee of a right to a trial by jury ” (p. 216). That case is therefore not germane to the problem here.
In Matter of Hogan v. Rosenberg (24 N Y 2d 207, supra), on the other hand, as the court noted (p. 219), the defendant, Marvin Puryear, was charged with possession of burglar’s tools, a class A misdemeanor, and criminal trespass in the third degree, a violation. This made the defendant subject to sentencing as a young adult (anyone between 16 and 21 years of age), pursuant to article 75 of the Penal Law, by which he might have received a reformatory sentence lasting four years. In that case, the trial court, upon the authority of Duncan (391 U. S. 145, supra) granted defendant’s motion for a jury trial. Thereupon, the District Attorney brought an article 78 proceeding to prohibit the trial court from carrying out its order. Special Term, on the basis of Duncan, held that “ section 40 of the New York City Criminal Court Act, to the extent that it denies a jury trial to young adults who face reformatory sentence pursuant to article 75 of the Penal Law is unconstitutional ”. (58 Misc 2d 585, 597.) The Court of Appeals disagreed with this conclusion. To avoid a constitutional impasse it took a pragmatic approach to the problem, saying (p. 221):
‘ ‘ Another, and far more realistic, approach is that the rationale of the companion case and the Supreme Court’s decision *75 in Matter of Gault (supra) deprive the New York City Criminal Court of jurisdiction to impose a reformatory sentence on young adults pursuant to article 75, in the absence of legislation authorizing a jury trial in such cases and providing procedural machinery therefor. This view would not only do the least damage to the legislative goal of speedy and efficient processing of prosecutions for minor offenses, but would also base the availability of jury trials upon the act allegedly committed by the defendant rather than his age; thus eliminating the anomaly of treating a crime as petty, when committed by a person over 21, while the same act committed by a young adult is considered to be serious.
“ Adopting this latter view, we hold that the Criminal Court has jurisdiction to prosecute and convict any defendant, including a young adult, for any misdemeanor and, upon conviction, to impose any and all of the sentences authorized for the particular crime involved, except as provided by article 75.
“We conclude, therefore, that as defendant Puryear is still awaiting trial, and can no longer receive a reformatory sentence, a conviction for the crimes charged will in no event subject him to imprisonment for a term greater than one year, and, therefore, he is not entitled to a trial by jury. ’ ’
Although Hogan, involved a young adult as defined by article 75 of the Penal Law, the holding by the court that the Criminal Court of the City of New York lacked jurisdiction to impose a reformatory sentence under that statute is equally applicable to youthful offenders and the reformatory sentence which could be imposed under section 913-m of the code above quoted. Thus, the juryless Criminal Court of the City of New York did not have jurisdiction to impose a reformatory sentence upon a youthful offender because it could have entailed incarceration for a period of four years.
By its decision in Hogan on March 6, 1969, the Court of Appeals effectively excised from section 913-m of the code the provision for a reformatory sentence. This elimination left the statute in a condition where a youthful offender could be sentenced only to (a) a sentence of probation, (b) a sentence of conditional discharge, or (c) a sentence of unconditional discharge. This elimination of any possibility of imprisonment for a youthful offender was manifestly contrary to the intention of the Legislature. Accordingly, on May 9, 1969, the Legislature, to fill the void created by Hogan, and to cope with the jurisdictional problem of the Criminal Court of the City of *76 New York, enacted an amendment to section 913-m of the code (L. 1969, ch. 375, eff. Sept. 1, 1969) which, so far as pertinent here, provided as follows:
“ 1. Upon adjudication of any person as a youthful offender, the court must impose one of the following sentences prescribed by the penal law:
“ (a) A sentence of probation;
“(b) A sentence of conditional discharge;
“(c) A sentence of unconditional discharge;
“ (d) A reformatory or an alternative local reformatory sentence of imprisonment; or
“ (e) The definite sentence of imprisonment that would be authorized if the youthful offender had been convicted for the criminal act for which he was adjudicated a youthful offender. ’ ’
Eleven days after the effective date of the foregoing amendment, petitioner was sentenced to a term of six months. By this habeas corpus proceeding petitioner contends that the amendment to 913-m, permitting a definite sentence, is ex post facto ias to him. He submits no citation of authority to support his position (about which comment is hereafter made), but my independent research has convinced me that his contention is sound.
Section 10 of article I of the United States Constitution provides, so far as material here, that: “ No State shall * * * pass any * * * ex post facto law ”. What renders a law dealing with crime or criminal procedures ex post facto has been clearly delineated and consistently repeated for many years. (Colder v. Bull, 3 [Dall U. S.] 386; Thompson v. Missouri, 17l U. S. 380, 385; Mallett v. North Carolina, 181 U. S. 589, 593; Rooney v. North Dakota, 196 U. S. 319, 325-326; Malloy v. South Carolina, 237 U. S. 180, 183-185.) In People ex rel. Pincus v. Adams (274 N. Y. 447) the following comprehensive definition of ex post facto laws was set forth (pp. 454-455): “ To test this contention we turn to the well-known case of Calder v. Bull (3 U. S. [Dall,] 386) for a defintion of ex post facto laws. ‘ I will state what laws I consider ex post facto laws within the words and the intent of the prohibition. 1. Every law that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action. 2. Every law that aggravates a crime, .or makes it greater than it was when committed. 3. Every law that changes the punishment, and inflicts a greater punishment than the law annexed to the crime when committed. 4. Every law that alters the legal rules of evidence and receives less or different testimony than *77 the law required at the time of the commission of the offense, in order to convict the offender. ’ Trial procedure may be changed by the Legislature and the new procedure may be made applicable to offenses previously committed without violation of the Constitution so long as the changes effected do not come within any of the four classes outlined above. (Beazell v. Ohio, 269 U. S. 167, 170; People v. Qualey, 210 N. Y. 202, 208.) The changes involved in the case at bar were merely procedural. They do not make criminal any acts which previously were innocent; nor do they aggravate a crime and make it greater than it was when committed. Nor do they inflict a greater punishment; nor do they provide for conviction on less or different testimony or create presumptions against the defendant.”
Thus a law which reduces punishment for a particular crime is not ex post facto — and “ the lesser penalty may be meted out in all eases decided after the effective date of the enactment, even though the underlying act may have been committed before that date.” (People v. Oliver, 1 N Y 2d 152, 160; also, see, People ex rel. Lonschein v. Warden of Queens House of Detention for Men, 43 Misc 2d 109, 119-121, affd. 15 N Y 2d 663; People v. Roper, 259 N. Y. 635; People v. Hayes, 140 N. Y. 484, 492.) Where, however, the change in the law inflicts a greater additional punishment than previously provided, such law is ex post facto and may not be applied to acts committed prior to its enactment. (People ex rel. Pincus v. Adams, 274 N. Y. 447, 454, supra; People ex rel. Lonschein v. Warden, supra, p. 119; also, see, People ex rel. Horowitz v. Lawes, 168 Misc. 772.)
In this case a determination of whether the 1969 amendment to section 913-m of the code is an ex post facto law depends upon whether it imposes a greater punishment upon a conviction of being a youthful offender in the Criminal Court of the City of New York than could be imposed prior to the enactment thereof.
It may be argued that the amendment is not ex post facto because the punishment of a definite sentence lessened or ameliorated the punishment which could have been imposed prior to the amendment. The rationale for such a position is that since a reformatory sentence — which carried a maximum term of four years (Penal Law, § 75.10, subd. 1) —could have been imposed prior to the amendment, the new provision for a definite sentence — which in no event can exceed one year (Penal Law, § 75.15, subd. 1) —was a reduction in the criminal *78 punishment which could be imposed upon a youthful offender in the Criminal Court.[1] Such a contention would be based upon a fallacious premise.
The effect of the holding by the Court of Appeals in Matter of Hogan v. Rosenberg (24 N Y 2d 207, supra), that the Criminal Court of the City of New York lacked jurisdiction to impose a reformatory sentence, was not only that such provision of *79 section 913-m of the Code of Criminal Procedure was totally ineffective but also that it never was the law so far as the Criminal Court was concerned. (People v. Tannenbaum, 23 N Y 2d 753; also, see, e.g., People ex rel. Rice v. Graves, 242 App. Div. 128, 133, affd. 270 N. Y. 498.) Courts (at least theoretically) do not make the law; they merely declare it. A decision of a court of supreme jurisdiction declaring a statute unconstitutional or that ia court lacked jurisdiction is retrospective in the operation. Therefore, 'so far as the Criminal Court of the City of New York is concerned, the provision in former section 913-m of the code permitting a reformatory sentence of imprisonment never legally existed and the only sentence that court could have validly imposed upon a youthful offender prior to the amendment was a sentence of probation, a sentence of conditional discharge, or a sentence of unconditional discharge.[2] It therefore follows that an amendment of that statute permitting the imposition of a sentence of imprisonment up to one year inflicted greater punishment than was previously permissible since this defendant, with the reformatory term excised from, the statute, .could not have been incarcerated at all. The amendment is, therefore, ex post facto as to him.
Although the foregoing is dispositive of this matter, I am constrained, because of the petition herein, to make some observations relative to the sorry state to which the profession of advocacy has fallen.
For sometime past some of my brothers at the Bench and I have been appalled at the steady land progressive deterioration of the quality of pleadings and affidavits, and a rare case in which a memorandum of law is submitted to the court. Lawyers should take pride in striving for and in applying a professional degree of craftsmanship to their efforts and not execute their necessary tasks perfunctorily and cavalierly. The profession of .advocacy — be it art, science or game (cf. Contested Advocacy, Nizer, N. Y. L. J., April 11 and 12, 1967) — consists of more than dogmatically taking a position or throwing out a contention. Proper advocacy requires that a contention be supported by a recitation of precise and detailed relevant facts; by the citation, if any, of pertinent authority; and by cogent and persuasive *80 argument based upon analogy or other classical form of arriving at conclusions. Apart from the fact that a lawyer owes this to the client he represents, for the ultimate result may well be affected by the absence of such application, the further fact is that lawyers, as officers of the court, owe it to the court, in discharge of their duty, to crystallize the matter to be determined. Illustrative of these observations is the petition in this proceeding. Firstly, the proceeding was incorrectly brought (the petitioner named in the title is the prisoner but the maker of the petition is his attorney). In addition, it is not stated in what court the prisoner was sentenced, nor on what date ; and the only support for the essential allegation that the prisoner is being unlawfully detained under a sentence are the dogmatic assertions, devoid of citation of authority or cogent demonstration, that1 ‘ the Court had no authority to incarcerate defendant because of the decisions of the Court of Appeals and Appellate Term ”; that the sentence imposed was pursuant to a new statute which became effective after the commission of the act; and that “ the application of this statute to the prisoner was illegal, and violated the ex post facto prohibition of the State and Federal Constitution.” In this connection it may also be noted that although this proceeding presented a question of first impression with regard to the statute involved, the District Attorney failed to submit anything in the matter.
I realize that the determination here made may very well flood the courts with applications by persons now incarcerated in the New York State Reformatory under sentence from the Criminal 'Court of the City of New York, but in view of my considered conclusion that the latter court was at all times without jurisdiction to impose a reformatory sentence and that the amendment to section 913-m of the Code of Criminal Procedure as it was applied to this defendant was ex post facto in nature, I can see no alternative to sustaining the writ to the extent of remanding petitioner to the Criminal Court of the City of New York, County of Queens, for resentence not inconsistent with this opinion.
In view of the importance of the matter and the numerous applications for writs of habeas corpus which will undoubtedly follow this determination, the District Attorney is urged to appeal therefrom forthwith.

. Such a contention was advanced, by the Chief Law Assistant in a memorandum dated August 28, 1969 which he submitted to the Judges of the Criminal Court. In that memorandum he said:
“In connection with the youthful offenders, as was indicated earlier, commencing on September 1st, they can be now sentenced to a definite term not exceeding one year. This obviates the requirement that they are entitled to a jury trial if they are subject to a term of more than one year. The question may arise as to whether this statute is prospective only, that is, applicable only to offenses committed on or after September 1st or whether it is retroactive and applicable to all offenses, no matter when committed. As noted previously the Court of Appeals has never held that the Criminal Court was without power to legally impose any sentence upon a defendant who received a judgment of more than one year without benefit of a jury trial. What was decided is the fact that the Criminal Court had no jurisdiction to impose a reformatory term without an offer of a jury trial. However, as the Court of Appeals further observed, the Criminal Court always had jurisdiction to impose a sentence of not more than one year upon any defendant. Thus, although the basic power to so sentence remained present, the various procedures that were employed to sanction longer sentences were declared illegal.
“ Consequently, what has been done is not to reduce or redefine the ‘ reformatory sentence ’ — that sentence is still valid for three or four years so long as the defendant was accorded a jury trial. The Criminal Court simply lacks the jurisdiction to impose a reformatory sentence. On the other hand, the amendment to Section 913 (m) of the Code of Criminal Procedure does permit the imposition of sentence upon a youthful offender as if he were an adult. That is, judgment may not be for a period over one year. Formerly, this same youthful offender was subject to be detained for three years in the reformatory. Now, although we may not denominate the new sentence effective September 1st, as a ‘ Reformatory Sentence ’, the youthful offender will be detained for not more than one year. In that sense the revision in the law can be said to be ameliorative in that it reduces the punishment that may be imposed. This lesser penalty may be meted out in all cases sentenced after the effective date of the enactment, ‘ * * * even though the underlying act may have been committed before that date ’. (People v. Oliver, 1 N Y 2d 152, 160),
“ As this new statute does not make criminal, what-was formerly innocent conduct, as it does not increase the punishment nor alter rules of evidence, its application retroactively cannot be said to be in any way ‘ expost facto (cf. People ex rel. Pincus v. Adams, 274 N. Y. 447).”
For the reasons stated in the body of this opinion the contention thus made is rejected in its entirety for the amended statute does create a punishment of incarceration of a youthful offender where legally no such punishment existed or could be imposed prior to the amendment.

. In this respect this case differs from the Rosenberg case for there a misdemeanor was involved and though the Criminal Court of the City of New York could not jurisdictionally impose a reformatory sentence because it was in no position to give the defendant a jury trial, there was an alternative prison sentence provided for by section 75.00 of the Penal Law. In our case, with the reformatory provision eliminated from section 913-m of the Code there was nowhere any alternative statutory provision for commitment.