Shirley Levitt an, J.
Defendant was charged in 1974 with sale and possession of methadone, a class A-II felony at the time of his indictment. Upon motion before the Honorable Leon Polsky the charge was reduced to a class A-III felony.
Prior to trial, the law respecting possession and sale of methadone was changed to lessen the severe penalties attached to such crimes. (See L 1975, ch 785.) The Legislature specifically provided for retroactive application of the new Penal Law sections. (See L 1975, ch 786.) The court, over defendant’s objection, amended the accusatory instrument to reflect the newly instituted regulatory scheme. Thereafter, defendant was tried and convicted of criminal sale of a controlled substance in the fifth degree, a class C felony under the amended section 220.34 of the Penal Law.
Defendant is a second felony offender. He claims that due to his predicate felony status, sentencing, pursuant to the recently enacted Penal Law provisions, might result in the imposition of a longer minimum sentence. This, he contends, would thus constitute harsher punishment in violation of the prohibition against ex post facto legislation (US Const, art I, § 9, subd 3). The People contend that the Penal Law revisions were designed to ameliorate the severe penalties imposed under the "Rockefeller Drug Law,” and, consequently, would not be an unconstitutional retroactive application of the law.
To facilitate analysis, it is helpful to review the sentencing alternatives on an A-III felony and on a second offender C felony. Under section 70.00 of the Penal Law, the maximum term for a class A felony is life imprisonment, and the minimum term in the discretion of the court may be set at not less than one year or more than eight years and four months. Section 70.06 of the Penal Law controls the sentencing of second felony offenders. It mandates that the maximum sentence upon conviction of a C felony by a predicate felon must be at least six years and no more than 15 years, and that the minimum sentence must be fixed by the court at one half of the maximum.
Thus, the instant motion presents a novel issue: whether or not a sentence of three to six years is more severe than an indeterminate sentence of life imprisonment with a possible minimum sentence of one year.
*677 Article I (§ 9, subd 3) of the United States Constitution provides: "No Bill of Attainder or ex post facto Law shall be passed.”
A statute is not invalid under the Federal Constitution merely because it is retroactive. (Matter of West, 289 NY 423, affd sub nom Demorest v City Bank Co., 321 US 36.) The United States Supreme Court in the landmark case of Calder v Bull (3 Dallas [US] 386), set down the specific types of laws which fall within the constitutional restriction on ex post facto legislation. Justice Chase declared (pp 390-391): "1st. Every law that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action. 2d. Every law that aggravates a crime, or makes it greater than it was, when committed. 3d. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed. 4th. Every law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offence, in order to convict the offender. All these, and similar laws, are manifestly unjust and oppressive. ”
A law, however, is not ex post facto which mollifies the rigor of the criminal law (Calder v Bull, supra). Thus, if a statute reduces punishment for a particular crime, then the lesser penalty may be meted out in all cases decided after the effective date of the enactment, even though the underlying act occurred before that date. (People v Oliver, 1 NY2d 152; People ex rel. Pincus v Adams, 274 NY 447; People v Rosenfeld, 61 Misc 2d 72.)
The ex post facto clause looks to the standard of punishment prescribed by a statute rather than to the sentence actually imposed and an increase in the possible penalty may be a violation of the clause regardless of the length of the sentence actually imposed. (Lindsey v Washington, 301 US 397, where a change in the statute required imposition of statutory maximum term on all indeterminate sentences, where formerly court had discretion to set a term up to the maximum term allowed by statute, was held unconstitutional; cf. People v Adcock, 4 Misc 2d 758.) In People v Warren (79 Misc 2d 777, 783, remanded on other grounds for further proceedings 48 AD2d 859), the court, citing People v Oliver (supra), noted that "one’s punishment is not to be strictly equated with one’s sentence, but rather is to be considered in *678 the broadest and most humane terms.” Consequently a "legislative mitigation” of the penalty for a particular crime represents a judgment that the lesser penalty or different treatment is sufficient to meet the legitimate ends of the criminal law (People v Oliver, supra, p 160; cf. People v Hayes, 140 NY 484).
In 1975 the Legislature, in response to criticism that the Penal Law provisions respecting the possession and sale of methadone were disproportionately severe because of the aggregate weight standard, enacted chapter 785. Chapter 785 revised the Penal Law by reclassifying methadone and restructuring methadone offenses.
For purposes of the criminal law, methadone is no longer considered a narcotic drug and is no longer subject to the aggregate weight standard for determining the grade of offense. The Legislature deemed it fairer to measure crimes involving methadone on a pure weight basis (see Hechtman, 1975 Supplementary Practice Commentaries, McKinney’s Cons Laws of NY, 1975-1976 Pocket Part, Book 39, p 6; NY Legis Ann, 1975, pp 64-65 [Memoranda of Assemblyman Herbert J. Miller]). Chapter 786 of the Laws of 1975 provided that the amendments to the Penal Law in chapter 785 "govern the construction of and punishment for offenses committed prior to its effective date in pending cases where sentence is imposed upon or after the effective date”. Consequently, it is clear that it was the plan of the Legislature to ameliorate the harsh penalties imposed under the old statute and to extend the benefits of the new law to those who committed methadone offenses prior to the effective date of the new legislation (NY Legis Ann, 1975, p 65, supra).
In New York, indeterminate sentences have long been regarded as a sentence for the maximum term (People v Washington, 264 NY 335, 338; People v Adams, 176 NY 351, 362). This view is in accord with the approach taken in other jurisdictions (see Commonwealth of Pennsylvania v Kalck, 239 Pa 533; Commonwealth of Massachusetts v Brown, 167 Mass 144; Matter of Lee, 177 Cal 690; State of Ohio ex rel. Attorney-General v Peters, 43 Ohio St 629; People ex rel. Bradley v Illinois State Reformatory, 148 Ill 413; Story v Rives, 97 F2d 182; United States ex rel. Paladino v Commissioner of Immigration, 43 F2d 821). The cases go on the theory that when the sentence is for an indefinite term and the court imposes a maximum punishment, then the prisoner in contemplation of *679 that law is committed for the full term, but may secure release at an earlier date if, by his deportment and good conduct, he proves himself worthy of the clemency which it is the policy of indeterminate sentence laws to extend him. Thus the maximum sentence is viewed as “the only portion of the sentence which has legal validity, and * * * the minimum sentence is merely an administrative notice by the court to the executive department, calling attention to the legislative policy that when a man’s so-called minimum * * * is about to expire, the question of grace and mercy ought to be considered and the propriety of granting a qualified pardon [release] be determined.” (Commonwealth v Kalck, supra, p 542; Commonwealth of Pennsylvania ex rel. Carmelo v Smith, 347 Pa 495; cf. State v Walsh, 106 Utah 22.)
In this instance the defendant, if sentenced for a C felony as a second-felony offender, could receive as a maximum sentence 6 to 15 years; whereas if he were sentenced under the old statute, a mandatory maximum sentence of life imprisonment would ensue. Thus his maximum exposure is, if anything, reduced under the new statutory scheme.
Moreover, in cases where the minimum sentence under an indeterminate sentence structure may be increased because of legislative amendments and the maximum sentence remains constant, the courts have uniformly held that such changes do not increase punishment so as to violate the constitutional protections embodied in the ex post facto clause (see People v Adams, 176 NY 351, supra; Commonwealth v Kalck, supra; Commonwealth v Brown, supra). In fact, as in Commonwealth v Kalck, supra, the court herein has discretion in setting minimum punishment, either higher or lower, under the new law than the minimum sentence permitted under the prior statute. The court in Kalck said that when the minimum sentence could be less than previously imposed, the minimum sentence imposed would not be considered a greater punishment.
Furthermore, the imposition of an indeterminate sentence when the maximum is life imprisonment has been viewed as more severe than a definite sentence (People v Buckley, 178 Misc 545, 548, app dismd 270 App Div 872, cert den 328 US 861). In this instance, an indefinite sentence for a shorter term may be regarded, when juxtaposed with a maximum sentence of life, as a less harsh punishment. For, as the court in Buckley observed (p 548), pursuant to a sentence of life *680 imprisonment "the offender must, so long as he lives, be under the control of the Board of Parole, whose power of incarceration ceases only with the death of the [defendant].”
Accordingly, since the statute does not increase the punishment to be imposed and in fact is designed to ameliorate our prior strict sentencing structure, the retroactive use of the new Penal Law provisions does not appear to be an unconstitutional application. Defendant’s motion to be sentenced under the old Penal Law is, therefore, denied.