FIRST DEPARTMENT, JUNE, 1983

(June 2, 1983)[1]

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MICHAEL FESTO, Appellant. — Judgment of the Supreme Court, New York County (Denzer, J.),

1. Not published with other decisions of June 2, 1983, 95 AD2d 655. [Rep.

rendered December 15, 1981, convicting defendant after trial by jury of criminal sale of a controlled substance in the first degree, conspiracy in the second degree and criminal use of drug paraphernalia in the second degree and sentencing defendant to various terms of imprisonment, affirmed. We differ from our dissenting brother on the question of sentence. We hold that the then-mandatory sentence of 15 to life imposed for the conviction of criminal sale of a controlled substance in the first degree was required by law. The proof, although circumstantial, was sufficient to establish defendant's accessorial liability with respect to the drug-selling operation conducted by defendant's codefendant Luis Calderon. Like our dissenting brother, we are troubled by the Draconian sentence. Yet, we cannot, in good conscience, say that this is the rare case which on its particular facts may lead to the opinion that the sentencing statute has been unconstitutionally applied (*People v Broadie,* 37 NY2d 100, 119; cf. *People v Jones,* 39 NY2d 694). While the proof lends itself to the conclusion that defendant, who controlled entrance into the Calderon apartment, was greeter, receptionist, general factotum and bodyguard for Calderon, there is no reasonable doubt that this function was to "protect" the operation by excluding those who might seek to disrupt it. Thus, while he was, *in the eyes of the law, an accessory to the crime and is equally guilty,* his participation in the criminal activity was markedly less than that of Calderon, the principal actor. In reviewing a sentence "[t]he court thus does not pass on the wisdom of the Legislature's acts. It holds only that, because of the Legislature's rational view of the gravity of the offenses, the danger posed by the offenders, and the penological purposes to be served, the punishments imposed for these crimes in the present state of man's knowledge were not grossly disproportionate or cruel and unusual in the constitutional sense" (*People v Broadie,* 37 NY2d 100, 118-119, *supra*). In these circumstances we cannot say that the sentencing statute was unconstitutionally applied (*People v Broadie,* 37 NY2d 100, 119, *supra;* see, however, dissenting opn of Breitel, Ch. J., in *People v Jones,* 39 NY2d 694, 698-702, *supra*). We are not unaware of the general rule that where a statute reduces the punishment which may be imposed for a crime committed before the statute was enacted but for which sentence is imposed after the statutory amelioration, the ameliorative statute ordinarily vests the court with the discretionary power to impose the lesser punishment provided by the new law. (*People v Oliver,* 1 NY2d 152.) The *reduction* of the punishment distinguishes it from an ex post facto law which is constitutionally barred and which either increases the punishment for a crime committed before the statute was enacted or makes criminal an act committed before its enactment (*People v Oliver,* 1 NY2d 152, 158, *supra*). Were we free to apply that rule in this case we might well be inclined to do so for chapter 410 of the Laws of 1979 reduced the crime committed by defendant to criminal sale of a controlled substance in the second degree. The statute became effective after the defendant had committed the crime and after he had been arrested and indicted, but before he had been tried, convicted and sentenced. However section 29 of chapter 410 provides: "Except as provided in section three of this act, the provisions of this act do not apply to or govern the construction of and punishment for any offense committed prior to the effective date of this act, or the construction and application of any defense to a prosecution for such an offense. *Such an offense must be construed and punished according to the provisions of law existing at the time of the commission thereof in the same manner as if this act had not been enacted.*" (Emphasis supplied.) Thus, we are specifically enjoined by law from imposing the lesser sentence permitted by the amended statute. Moreover, we take occasion to note that the statute did much more than simply alter the punishment for the crime. It redefined the crime by increasing the weight of the narcotic drug sold necessary to constitute the sale

an A-I felony. That *Oliver* did not intend to cover such a case is evident from the footnote (1 NY2d 152, 161, n 3) which mentions the matter. In holding as we do we are moved by no less a sense of compassion than motivates our dissenting brother. We note that defendant's prior record, although not a perfect one, is not particularly bad. Under the circumstances we deem it appropriate to call the attention of the Governor, with whom lies the power "to grant reprieves, commutations and pardons after conviction, for all offenses except treason and cases of impeachment" (NY Const, art IV, § 4) to the situation with the recommendation that he take such action as may be appropriate. Concur — Sandler, J. P., Sullivan, Silverman and Bloom, JJ.

Carro, J., dissents in a memorandum as follows: Appellant stands convicted under section 220.43 of the Penal Law, as enacted in 1973 (and amended in 1975 and 1977), i.e., he "knowingly and unlawfully" participated in the sale of more than one ounce of a narcotic drug. Festo's crime occurred in June of 1979 and involved 1.975 ounces of cocaine. Up until September 1, 1979, the unlawful sale of one or more ounces of a narcotic drug constituted the crime of criminal sale of a controlled substance (CSCS) in the first degree (Penal Law, § 220.43), a class A-I felony, punishable by at least 15 years to life (Penal Law, § 70.00, subds 2, 3). By amendment effective September 1, 1979, however, defendant's act would only sustain conviction for criminal sale of a controlled substance in the second degree (Penal Law, § 220.41), two or more ounces now being required for a first degree prosecution. (L 1979, ch 410, eff Sept. 1, 1979.) CSCS, second degree, is an A-II felony with a minimum of 3 years to life, and a maximum of 8⅓ to life (at least 6 to life and at most 12½ to life for a second felony, Penal Law, § 70.06). Festo has a prior felony conviction from 1976, attempted criminal possession of a weapon in the third degree. Festo was indicted August 1, 1979 but did not come to trial until 1981. Thus he was appropriately tried, convicted and sentenced under the law as it existed at the time he was indicted. However, he should have been immediately resentenced as if convicted of an A-II felony — in his case, to 6 years to life as a second felony offender. In general, "[T]he rule laid down seems to be that a statute, enacted subsequent to the offenses that increases the punishment, does not govern the punishment but rather the law at the time of commission. The opposite is true if the new enactment reduces the punishment." (*People v McGowan,* 199 Misc 1, 3.) Said more straightforwardly, "[a] statute reducing punishment for a crime may apply to a crime committed before the enactment of such statute. (*People ex rel. Pincus* v. *Adams,* 274 N. Y. 447.)" (*People v Spagnolia,* 260 App Div 551, 552.) In *Pincus,* the relator sued to challenge the application of new laws, one of which allowed cumulative sentences to be imposed concurrently. Judge Finch, writing for the court (p 457), reasoned that since the new statute "enables the court to impose a lesser sentence than was permissible under the law prior to its amendment", its application to relator was constitutional and proper.[2] *Pincus* is the forerunner of a principle in New

2. "A statute which changes the punishment * * * for a crime theretofore committed is *ex post facto* only if it prescribes or permits the imposition of a greater sentence." (*People ex rel. Pincus v Adams,* 274 NY 447, 457.) The fear in this case of offending the constitutional prohibition against ex post facto laws seems to derive from the strongly unequivocal holdings in *Hartung v People* (22 NY 95 [per Denio, J.]) to the effect that (1) when a penal statute is repealed, *without any savings clause,* after a conviction, it arrests the judgment; no sentence can be pronounced under the new law, though it inflicts the same punishment; and (2) where an act inflicting punishment for crime is repealed, *without any savings clause,* and a new statute is enacted upon the same subject inflicting a different punishment, it is an ex post facto law, as to persons already under conviction, and void. (Cf. *Calder v Bull,* 3 Dall [3 US] 386 [per Chase, J.]; *Yeaton v United States,* 5 Cranch [9 US] 281, 282 [per Marshall, Ch. J.]; accord *People v Madill,* 91 Hun 152; compare *People v Bruno,* 176 App Div 56 [bond forfeiture only procedural, not affecting right to relief]; see, also, *Kring v Missouri,* 107 US 221, 230-231.)

York jurisprudence that is now firmly embedded, if not always followed. As alluded to in the footnote, its development has been strongly connected to judicial deference to the ex post facto clause. Thus, in 1932, Judge Lehman cited to *Hartung v People* (*supra*), rather than *Pincus* when he wrote that "[i]n the absence of a clause excluding from its provisions offenses previously committed, the law as amended applies in all trials held thereafter, even for offenses previously committed." (*People v Roper,* 259 NY 170, 180; contra *People ex rel. Kammerer v Brophy,* 255 App Div 821, 822, "[t]he relator was properly sentenced under the law in force at the time the crime was committed and the indictment was found", affd without opn 280 NY 618; but see *People v Spagnolia,* 260 App Div 551, *supra.*) In this unsettled state the law remained until 1956, when (then) Judge Fuld gave, in depth, an analysis of why, "indeed, where an ameliorative statute takes the form of a reduction of punishment for a particular crime, the law is settled that the lesser penalty may be meted out in all cases decided after the effective date of the enactment even though the underlying act may have been committed before that date. (Penal Law, § 38; see *People* v. *Roper, supra,* 259 N. Y. 635 [*sic*]; *People* v. *Hayes, supra,* 140 N. Y. 484; *People ex rel. Pincus* v. *Adams, supra,* 274 N. Y. 447, 457; *People* v. *Spagnolia,* 260 App. Div. 551; see, also, 1 Sutherland, *op. cit.* [Statutory Construction (3d ed)], § 2048, pp. 534-535; 1 Wharton, *op. cit.* [Criminal Law (12th ed)], § 42, p. 59.)" (*People v Oliver,* 1 NY2d 152, 159-160.) The case involved a man who, at the age of 14 in April of 1945, took a butcher knife and stabbed his younger brother "several times in the chest and back; then carried the child to the bathroom, placed him in the tub, filled it with water and kept him immersed for 5 or 10 minutes; and then, after returning him to his bed, defendant set fire to the bedclothes" (p 154.) The boy then packed a suitcase, went downstairs to wait for the fire engines to arrive and then proceeded to the police station and confessed his crime. Indicted a week later, the boy pleaded not guilty and was soon committed to the Matteawan State Hospital as too insane to stand trial. Over nine years later he was certified to be capable of understanding the charges and standing trial, which he did. His insanity defense failed and the jury found him guilty of first degree murder. (1 NY2d, at pp 154-155.) The Court of Appeals reversed and dismissed the indictment on the grounds that a 1948 amendment to the Penal Law, no longer allowed criminal prosecutions of a child under 15.[3] The court dismissed the indictment entirely because defendant was then past the age of 21, and it was "exceedingly doubtful whether he may be proceeded against in the children's court" (*People v Oliver,* 1 NY2d, at p 163, n 4). Without reprinting the whole opinion, much of Judge Fuld's reasoning bears repeating (pp 157-163): "We must decide, of course, whether the 1948 amendment, removing the acts of children under 15 from the category of crimes, should be read to apply to the act of this defendant, committed before its enactment, when he was only 14 years old. The general rule is clear. Statutes dealing with matters other than procedure are not to be applied retroactively absent a plainly manifested legislative intent to that effect (See, e.g., *Garzo* v. *Maid of Mist Steamboat Co.,* 303 N. Y. 516, 522; *Shielcrawt* v. *Moffett,* 294 N. Y. 180, 188; *Addiss* v. *Selig,* 264 N. Y. 274, 281; *Jacobus* v. *Colgate,* 217 N. Y. 235, 240.) The rule recognizes that people guide their affairs in the light of existing laws and that it would be unfair to defeat the expectations, rights and liabilities arising under those laws by subsequent retroactive changes. Particularly in the area of criminal law, statutes which condemn an act innocent when done, or increase the punishment for previously committed crimes, have always been regarded as oppressive and prohibited, as ex post facto laws, by the Federal Constitution. (U. S. Const., art. I, § 10; see, e.g., *People ex rel. Pincus* v. *Adams,* 274 N. Y.

---

**3.** Previously a child over seven could be prosecuted for any crime punishable by death or imprisonment. (*People v Roper,* 259 NY 170.)

447, 454-455; *People* v. *Hayes,* 140 N. Y. 484, 490-491; *Calder* v. *Bull,* 3 Dallas [U. S.] 386, 390.) On the other hand, when a criminal statute is repealed or a penalty reduced, different considerations are involved. In such a case, there is no problem of preserving private rights and liabilities; and, since the legislation is ameliorative, there is no danger of ex post facto oppression. (See *People* v. *Hayes, supra,* 140 N. Y. 484, 491.) The question becomes, rather, whether the State should retain the right to punish offenses committed before the legislative change under the more stringent law then in effect. At common law, it was generally held that the repeal or amendment of a penal statute barred any further prosecution under that statute for violations committed before the repeal, and abated all pending prosecutions which had not reached final judgment. (See, e.g., *Hartung* v. *People* 22 N. Y. 95, 99-103; *United States* v. *Reisinger,* 128 U. S. 398, 401; see, also, 1 Sutherland, Statutory Construction [3d ed., 1943], § 2046, pp. 529-530; 50 Am. Jur., Statutes, § 568, p. 569.) Of the many reasons advanced to explain that rule (see Levitt, Repeal of Penal Statutes and Effect on Pending Prosecutions, 9 A. B. A. J. 715), the most plausible and pervasive was that the repeal reflected 'legislative will' that offenses against the statute, though committed while it was still in force, should 'no longer be regarded criminal, and * * * [should] not be punished under the repealed statute.' (*Vincenti* v. *United States,* 272 F. 114, 115; see *Anonymous* [Case No. 475], Fed. Cas. No. 475, Vol. 1, pp. 1032, 1034; see, also, Note, 89 A. L. R. 1514.) Strictly applied, as it was, the common-law rule often worked to produce unjust results and defeat the obvious legislative design. Thus, when, following the repeal of an old statute, a new one was enacted treating the crime more strictly, an offense committed before the change might go entirely unpunished. The repealed statute could not be availed of, for in legal contemplation it no longer existed. The new, replacing statute, being more burdensome, could not be relied upon, for the prohibition against ex post facto laws prevented its application to acts committed before its enactment. (See *Hartung v. People, supra,* 22 N. Y. 95; same case, 26 N. Y. 167, 28 N. Y. 400; *People* v. *Cleary,* 13 Misc. 546, 552-553; see, also, 1 Wharton on Criminal Law [12th ed., 1932], § 42, pp. 59-60, and n. 14; Note, 167 A. L. R. 845.) In order to avoid this result, 'saving clauses' were inserted in repealing laws, in order to preserve the State's right to prosecute offenses previously committed under the repealed statute. Indeed, in 1892, New York enacted a general saving clause applicable to all legislation (see 1 McKinney's Cons. Laws of N. Y., Book 1, Statutes, §§ 412-413, pp. 443-446), and today it appears in sections 93 and 94 of the General Construction Law. Section 93 declares, 'The repeal of a statute or part thereof shall not affect or impair any act done, offense committed or * * * penalty, forfeiture or punishment incurred prior to the time such repeal takes effect,' and section 94 provides that all proceedings commenced and pending at the time a statute is repealed 'may be prosecuted * * * to final effect in the same manner as they might if such provisions were not so repealed.' These sections, however, like all provisions of the General Construction Law, are not to be applied when the 'general object' of the statute, 'or the context of the language construed, or other provisions of law indicate that a different meaning or application was intended'. (General Construction Law, § 110; see *People* v. *Roper,* 259 N. Y. 635.) They have been read by this court to 'provide merely a principle of construction', which governs 'In the absence of * * * contrary intent' and which applies 'with special force to statutes which otherwise would be *ex post facto* or would deprive persons of substantial rights.' (*People* v. *Roper, supra,* 259 N. Y. 635.) And, indeed, where an ameliorative statute takes the form of a reduction of punishment for a particular crime, the law is settled that the lesser penalty may be meted out in all cases decided after the effective date of the enactment, even though the underlying act may

have been committed before that date. (Penal Law, § 38; see *People* v. *Roper, supra,* 259 N. Y. 635; *People* v. *Hayes, supra,* 140 N. Y. 484; *People ex rel. Pincus* v. *Adams, supra,* 274 N. Y. 447, 457; *People* v. *Spagnolia,* 260 App. Div. 551; see, also, 1 Sutherland, *op. cit.,* § 2048, pp. 534-535; 1 Wharton, *op. cit.,* § 42, p. 59.) This application of statutes reducing punishment accords with the best modern theories concerning the functions of punishment in criminal law. According to these theories, the punishment or treatment of criminal offenders is directed toward one or more of three ends: (1) to discourage and act as a deterrent upon future criminal activity, (2) to confine the offender so that he may not harm society and (3) to correct and rehabilitate the offender. There is no place in the scheme for punishment for its own sake, the product simply of vengeance or retribution. (See Michael & Wechsler on Criminal Law and its Administration [1940], pp. 6-11; Note, 55 Col. L. Rev., pp. 1039, 1052.) A legislative mitigation of the penalty for a particular crime represents a legislative judgment that the lesser penalty or the different treatment is sufficient to meet the legitimate ends of the criminal law. Nothing is to be gained by imposing the more severe penalty after such a pronouncement; the excess in punishment can, by hypothesis, serve no purpose other than to satisfy a desire for vengeance. As to a mitigation of penalties, then, it is safe to assume, as the modern rule does, that it was the legislative design that the lighter penalty should be imposed in all cases that subsequently reach the courts * * * It may be well to note that the construction that we are here according to the amendment cannot be applied in favor of an offender tried and sentenced to imprisonment before its enactment. (See *People ex rel. Downie* v. *Jackson,* 286 App. Div. 1131, motion for leave to appeal denied today, April 26, 1956, 1 N Y 2d 642.) This inevitably follows from the settled rule that, once final judgment has been pronounced, a change in the law 'does not arrest or interfere with execution of the sentence.' (*Welch* v. *Hudspeth,* 132 F. 2d 434, 436; see, also, *People ex rel. Guariglia* v. *Foster,* 275 App. Div. 893; *People ex rel. Paster* v. *Palmer,* 274 App. Div. 856; 1 Sutherland, *op. cit.,* § 2046, p. 529 and n. 2.) Whenever the Legislature alters existing law, a certain measure of inequality is bound to ensue. Where the change is ameliorative and reflects a judgment that the earlier law was unduly harsh or unjust, a court should not withhold the benefits of the new statute to one tried after its passage, merely because it is powerless to extend them to those already convicted." The *Oliver* case has been generally cited as authority for its discussion of penological objectives (*People v. Broadie,* 37 NY2d 100, 114; *People v Askew,* 93 Misc 2d 754 [per Lowe, J.], affd 66 AD2d 710; *People v Farr,* 80 Misc 2d 250, 253 [per Kirschenbaum, J.], affd 48 AD2d 769; *People v Flynn,* 32 Misc 2d 155, 159-160.) *Oliver's* most enduring value, however, has been the authorization of ameliorative treatment of a defendant tried and/or sentenced *after* a law has been made less harsh. (See *Matter of Mulligan v Murphy,* 14 NY2d 223, 227 [per Scileppi, J.], revg 19 AD2d 218, 225; *People v Hernandez,* 10 NY2d 774, 777 [Froessel, J., dissenting]; *People v Konono,* 9 NY2d 924; *People v Rafter,* 89 AD2d 673; *People v Lynch,* 85 AD2d 126, 131-132; *People ex rel. Emanuel v Quinn,* 66 AD2d 905; *People ex rel. De Flumer v Vincent,* 43 AD2d 948; *People v Codarre,* 20 AD2d 98 [per Beldock, P. J.]; *People v Stampler,* 115 Misc 2d 547, 548; *Matter of Burke v New York State Bd. of Parole,* 103 Misc 2d 615, 616-617; *Matter of Mycuta A.,* 97 Misc 2d 670, 672 [citing *People v Roper*], revd on other grounds 75 AD2d 774; *People ex rel. Stage v Sherwood,* 94 Misc 2d 372, 375; *People v Morales,* 87 Misc 2d 675, 677; *People v Apted,* 79 Misc 2d 777, 783, remanded on other grounds for further proceedings 48 AD2d 859; *People v Rosenfeld,* 61 Misc 2d 72, 77; *State of New York v New York Movers Tariff Bur.,* 48 Misc 2d 225, 244; *People ex rel. Lonschein v Warden of Queens House of Detention for Men,* 43 Misc 2d 109, affd 15 NY2d 663.) The weight of authority,

then, clearly recognizes this principle, as it is embodies and expressed through *Oliver* and *People v Roper* (*supra;* cf. *United States v Azevedo,* 386 F Supp 622, 625 [USDC, Hawaii, recognizes the New York rule in *Oliver* but declines to adopt it for Hawaii]). While this court has only indirectly relied upon *Oliver* for this principle (*People v Farr, supra; People v Askew, supra*), and has never cited to it directly, the ameliorative principle *Oliver* stands for has been indorsed, in logic parelleling that of Judge Fuld. (See, e.g., *People v Cornish,* 21 AD2d 280, 283 [per Breitel, J. P., "Remedial statutes are usually applied to cases as they arise, whether or not past transactions are involved. It is especially true that the new remedy will be applied to past transactions if the reason for the enactment extends to them."]; compare *People v Monteleone,* 30 AD2d 158; *People v Curro,* 26 NY2d 669.) The requirement of *Oliver* and its progeny (that courts give the benefit of ameliorative changes in the criminal law to defendants tried and convicted after the effective date of the amendment) is really a strong legal presumption that the Legislature intended such a result. This presumption can only be overcome by a strong showing of contrary intent, and that kind of showing cannot be made here. True, section 29 of chapter 410 of the Laws of 1979 states generally that "[an] offense committed prior to the effective date of this act * * * must be construed and punished according to the provisions of law existing at the time of the commission thereof". This general savings clause is insufficient, however, to rebut the support for the presumption embodied in the whole of chapter 410, any more than are the general savings clauses in sections 93 and 94 of the General Construction Law. Indeed, section 29 of chapter 410 begins by stating, "[e]xcept as provided in section three of this act", referring to section 60.09 of the Penal Law's authorization for resentencing previously convicted defendants under the new act. The omission in section 60.09 of the Penal Law of a provision for resentencing defendants whose sale would not now constitute a first degree felony must be presumed to be an oversight in light of the Legislature's specific attempt to spread the benefit of the amendment as widely as possible, and the Governor's forceful statement that the prior law was ineffective and unfair, with the amendment intended to ameliorate the past injustices. In approving the amendment in question, (then) Governor Carey stated that the revision was intended "to provide a more rational sentencing structure by giving the Judiciary greater flexibility to deal leniently * * * address[ing] some of the most glaring disparities in the Drug Law and mak[ing] sentences for the possession and sale of narcotics more fairly reflect the seriousness of the offense." (Approval Memorandum, NY Legis Ann, 1979, p 238.) Section 29 is merely a savings clause with the dual purpose of (1) preventing the result reached in *Hartung v People* (22 NY 95), and (2) referring courts to section 60.09 of the Penal Law for the technical procedure for amelioration. This also answers the argument that to resentence these defendants under *Oliver* would open a floodgate that would clog the courts. If section 60.09 of the Penal Law didn't bother the Legislature on this point, the far fewer defendants who would be inspired by action here by us to move for resentencing should not bother the judiciary. Nor does this appear to be a valid legal argument for misapplying the law. (Compare *People v Loria,* 10 NY2d 368, 370.) In other cases, with other statutes, courts have distinguished and avoided the mandate of Oliver. (See, e.g., *People v Hernandez,* 10 NY2d, at p 777 [Froessel, J., dissenting]; *People v Millard,* 32 AD2d 676; *People v Pepples,* 32 AD2d 1041, affd without opn 27 NY2d 785.) *Pepples* is a clear case of a court blatantly overriding *Oliver, Roper,* and *Pincus,* as the strong dissent of Justices Christ and Kleinfeld points out (32 AD2d, at pp 1041-1042). But *Pepples* did not purport to overrule *Oliver* (indeed, the majority cited to it), and the simple affirmance by the Court of Appeals, without opinion, does not act to overrule *Oliver. Pepples* was a close

case (three to two), concerned with the minor 1967 amendments to the Penal Law and the savings clause in section 5.05 of the Penal Law. It is clearly distinguishable from the instant case where the over-all design of the amendment is the abatement of the Draconian Rockefeller drug laws. Furthermore, the Second, Third and Fourth Departments, as well as the lower courts, have all recognized *Oliver*'s vitality as recently as 1982 (*People ex rel. Emanuel v Quinn,* 66 AD2d 905 [2d Dept]; *People v Rafter,* 89 AD2d 673 [3d Dept]; *People v Lynch,* 85 AD2d 126, 131-132 [4th Dept]; see, also, *People v Askew,* 93 Misc 2d 754, 762-763, affd 66 AD2d 710; *People ex rel. Stage v Sherwood,* 94 Misc 2d 372, 375). Even the Second Department itself has used *Pepples* as authority for the proposition that "an ameliorative statute will be applied to cases which have not reached final judgment when the ameliorative statute becomes effective". (*People v Teixeira,* 87 AD2d 895.) The only question is the effect of the savings clause, i.e., does it rebut the presumption announced in *Oliver?* Justice Reynolds, in *Millard,* refused to give a defendant the benefit of an amendment making the criminal act only a misdemeanor rather than a felony, distinguishing *Oliver* in his finding that section 5.05 of the Penal Law expressed a clear legislative intent that amelioration not occur. (See, also, *People v De Lage,* 65 AD2d 626 [declines to follow *Oliver*]; *People v McDaniel,* 79 Misc 2d 848 [cites section 5.05 of the Penal Law and distinguishes *Oliver* based on n 3, at p 161].) While *People v Hernandez* (*supra*) can be distinguished, notwithstanding Judge Froessel's dissent, by the court's memorandum decision that the errors complained of were harmless, the most persuasive distinction of *Oliver* is in fact that made by Reynolds in *Millard,* i.e., whether or not the Legislature evidenced a clear intention that the lessened severity of an amendment *not* be applied to cases tried subsequent to enactment. (Cf. *People ex rel. Stage v Sherwood,* 94 Misc 2d, at p 375: "since the changes in these contempt statutes are ameliorative and reflect a judgment that the earlier law was unduly unjust, a court should not withhold the benefits of the new statute to one tried after its passage [*People v Oliver,* 1 NY2d 152, 163]"; compare McKinney's Cons Laws of NY, Book 1, Statutes, § 54, pp 108-109 ["remedial statutes constitute an exception to the general rule that statutes are not to be given a retroactive operation, since they are to be liberally construed to spread their beneficial results as widely as possible"]; see, also, *People ex rel. Kaminstein v Brooklyn State Hosp.,* 49 Misc 2d 57, 60, revd on other grounds 26 AD2d 669, "[t]he general rule is that statutes are to be construed as prospective only unless a clear expression of contrary intent is found" [string cite includes *Oliver* and *Mulligan*].) Another avenue of distinguishing *Oliver* has been the puzzling language in footnote 3 (p 161). (Cf. *People v McDaniel, supra; People v Baird,* 48 Misc 2d 410, 411.) The footnote comes amidst statements (p 161) about the State's choice to decriminalize the acts of youths and instead to "direct its efforts toward seeking and averting the causes of juvenile delinquency, on the premise that erring children, still in the formative years of their lives, will respond to remedial and corrective efforts.[3]" The footnote reads (p 161): "3. Obviously, this is quite different from a change in law abolishing a crime, or altering its definition, where the State may prefer to retain the right to prosecute for the act previously committed in deliberate defiance of the law as it then existed. (Cf. *People* v. *England,* 91 Hun 152; *United States* v. *Reisinger, supra,* 128 U. S. 398; see, also, *Levitt, op. cit.* [Repeal of Penal Statutes and Effect on Pending Prosecutions, 9 ABAJ], p. 715.)" This is confounding language, implying far more than it actually says. A look at the two cases cited helps bring its meaning into perspective. In *Reisinger* the defendant challenged the constitutionality of his prosecution under a Federal statute that had been repealed. Although no specific savings clause was in the

repealing act, the Supreme Court found the general language in section 13 of the Revised Statutes — a general savings clause — to be sufficient. In *People v England* (91 Hun 152, 153), a bribery statute had been amended so that punishment, instead of a fine or imprisonment, could only be " 'imprisonment for not more than one year' ". The Third Department, by Justice Putnam, upheld the application of the new law to the defendant, using the savings clause to preserve the prosecution and the reduction in permissible sentence to rebut the ex post facto argument (citing to *Hartung v People,* 22 NY 95, *supra*). *People v Baird* (p 411) is thus more understandable in its reliance on "[the] footnote", because in that case, after indictment but before trial, the Legislature repealed that part of the Penal Law which made it a crime to distribute contraceptive drugs (there, vaginal foam). While the case is probably no more than an historical relic reminiscent of another 1965 case, *Griswold v Connecticut* (381 US 479 [striking down the criminal prosecution of a physician who distributed contraceptives]), *People v Baird* is also distinguishable on the *Oliver* question, i.e., we are not concerned with either defendant's prosecution, but only the sentence that should be imposed. Even more is this true of *Reisinger. Oliver* should not be mistaken as positing discretionary power with appellate courts. It is a positive rule of construction, a legal presumption of great weight which should not be disregarded. Especially at a time when the Governor and legislative leaders are publicly discussing ways of attacking the problem of sentence disparity — if need be, at the cost of judicial discretion — this court should not ignore *Oliver*'s gloss on the pervasive design of section 60.09 of the Penal Law and the over-all purpose of the amendment. Although defendant did not brief this point on appeal, it is an issue that is significant and compelling. *Oliver* is good law and, "[a]bsent ex post facto objections, the law to be applied by this court on an appeal is the law as it exists at the time the appeal is decided (*People v Loria,* 10 NY2d 368)." (*People v De Lage,* 65 AD2d 626.) Because I find the court's action by omission to be illegal, I dissent.