PEOPLE v SCHULTZ

Docket No. 101072. Submitted April 19, 1988, at Lansing. Decided November 7, 1988. Leave to appeal applied for.

David M. Schultz was charged with the manufacture, delivery or possession with intent to manufacture or deliver 225 grams or more but less than 650 grams of a mixture containing cocaine. The theory of the prosecution was that defendant aided and abetted one Daniel Jamieson in Jamieson's delivery of the cocaine to an undercover police officer. At trial in Oakland Circuit Court, Hilda R. Gage, J., there was testimony that, following the purchase of the cocaine by the officer, defendant was found in a room adjacent to the room in which the sale took place and into which Jamieson had gone twice during the sales transaction and which contained in plain view a scale, a compound commonly used to cut cocaine, a mirror with a white powder residue on it and a switchblade knife. Under police questioning, defendant first informed the officer that he had only come to the Jamieson residence to work out. After an extended period of questioning, defendant finally admitted that he had brought a package to Jamieson. The officer further testified that defendant had indicated that he had looked into the package and knew it contained cocaine. Defendant testified that he had delivered the package but that he had not known that it contained cocaine. During closing arguments, the prosecution argued that "if you believe that he was so adamant on insisting on his innocence to Officer Madigan and here before you, why in heaven's name did it take him, according to his own testimony, one hour and a half to tell Officer Madigan that

REFERENCES

Am Jur 2d, Criminal Law §§ 167 et seq., 539, 580.

Am Jur 2d, Drugs, Narcotics, and Poisons §§ 21, 45.

Am Jur 2d, Trial §§ 193, 221, 305, 575, 710 et seq.

Supreme Court's views as to what courtroom statements made by prosecuting attorney during criminal trial violate due process or constitute denial of fair trial. 40 L Ed 2d 886.

Review for excessiveness of sentence in narcotics case. 55 ALR3d 812.

What constitutes "possession" of a narcotic drug proscribed by sec. 2 of the Uniform Narcotic Drug Act. 91 ALR2d 810.

he took the package." The jury was instructed on both the charged crime of the manufacture, delivery or possession with intent to manufacture or deliver 225 grams or more but less than 650 grams of a mixture containing cocaine and of simple possession of the same amount of the same mixture. The jury returned a verdict of guilty of simple possession. Defendant was sentenced to the mandatory minimum sentence of twenty years in prison. Defendant appealed.

The Court of Appeals *held:*

1. There was sufficient evidence to send the question of defendant's guilt as to the charged crime to the jury; accordingly, the trial court properly denied defendant's motion for a directed verdict.

2. The prosecution's reference to the fact that it was only after a significant period of time had elapsed that defendant admitted that he had brought the package to the Jamieson residence did not constitute an impermissible comment on the defendant's right to remain silent.

3. Since there was no objection to instructing the jury on simple possession of the claimed amount of the mixture containing cocaine, reversal can be had only upon a showing of manifest injustice. No such showing was made.

4. In view of the fact that the Legislature, subsequent to sentencing in this case, reduced the mandatory minimum sentence to ten years and permitted a sentencing court to depart from even that minimum where there are substantial and compelling reasons, resentencing under the amended statute is appropriate.

Affirmed but remanded for resentencing.

1. CRIMINAL LAW — CONTROLLED SUBSTANCES — COCAINE — POSSESSION WITH INTENT TO DELIVER — ELEMENTS.

Four elements must be shown to support a finding that a defendant directly committed the crime of possession of cocaine with intent to deliver in any mixture of 225 grams or more, but less than 650 grams: (1) the substance involved must be shown to be cocaine; (2) it must be shown that the drug was in a mixture which weighed 225 grams or more but less than 650 grams; (3) the defendant must not be authorized by law to possess the substance; and (4) the defendant must have knowingly possessed the cocaine with the intent to deliver it (MCL 333.7401[1] and [2][a][ii]; MSA 14.15[7401][1] and [2][a][ii]).

2. CRIMINAL LAW — AIDING AND ABETTING — ELEMENTS.

Three elements must be shown to support a finding that a defendant aided and abetted in the commission of a crime: (1)

the crime charged was committed either by the defendant or some other person; (2) the defendant performed acts or gave encouragement which aided and assisted the commission of the crime; and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time of giving aid or encouragement.

3. CRIMINAL LAW — EVIDENCE — DEFENDANT'S SILENCE — PROSECUTORIAL COMMENT.

   A prosecutor may properly comment upon the fact that a defendant did not give an exculpatory statement to the police until after having continued discussions with the police for an extended period of time, since such a comment by the prosecutor does not constitute impermissible comment upon the defendant's exercising of the right to remain silent but rather is a permissible comment upon the credibility which should be afforded to the defendant's statement.

4. CONTROLLED SUBSTANCES — JURY INSTRUCTIONS — POSSESSION OF COCAINE — MANIFEST INJUSTICE.

   No manifest injustice results from instructing the jury on possession of cocaine where a defendant is charged with manufacturing, delivery or possession with intent to manufacture or deliver cocaine (MCL 333.7401[2][a][ii]; MSA 14.15[7401][2][a][ii]; MCL 333.7403[2][a][ii], MSA 14.15[7403][2][a][ii]).

5. CONTROLLED SUBSTANCES — SENTENCING — MANDATORY SENTENCE — POSSESSION OF COCAINE.

   A defendant sentenced pursuant to the mandatory twenty-year minimum sentence mandated for possession of 225 grams or more but less than 650 grams of cocaine prior to the amendment of that statute by 1988 PA 60 should be resentenced under the provisions of the amended statute which provides for a ten-year minimum sentence and permits the sentencing court to depart from that minimum sentence where there are substantial and compelling reasons to do so (MCL 333.7403[2][a][ii], 333.7403[3]; MSA 14.15[7403][2][a][ii], 14.15[7403][3]).

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *L. Brooks Patterson,* Prosecuting Attorney, *Robert C. Williams,* Chief, Appellate Division, and *Thomas S. Richards,* Assistant Prosecuting Attorney, for the people.

*Faintuck, Shwedel & Wolfram* (by *William G. Wolfram*), for defendant on appeal.

Before: KELLY, P.J., and SULLIVAN and M. J. SHAMO,* JJ.

KELLY, P.J. The information originally charged that defendant and Daniel Jamieson did manufacture, deliver or possess with intent to manufacture or deliver 225 grams or more but less than 650 grams of a mixture containing cocaine. MCL 333.7401(2)(a)(ii); MSA 14.15(7401)(2)(a)(ii). The prosecution's theory of the case was that defendant aided and abetted Jamieson's delivery of cocaine to an undercover police officer.

Following a jury trial, on April 28, 1987, defendant was convicted of possession of 225 grams or more but less than 650 grams of cocaine. MCL 333.7403(2)(a)(ii); MSA 14.15(7403)(2)(a)(ii). Jamieson absconded while on bail and his case is not before this Court. Defendant was sentenced to a prison term of from twenty to thirty years, the statute at the time of sentencing mandating that the minimum sentence be for not less than twenty years. He appeals as of right.

I

The charge arose from the events of November 13, 1986, when an undercover police officer made a controlled buy of approximately ten ounces of cocaine from Jamieson, in Jamieson's basement. Twice during the course of the transaction Jamieson withdrew into an adjacent room in the basement and conferred with someone.

Once the prearranged signal for the raid was given, the police quickly entered the Jamieson residence. Within seconds of going into the home, a police officer pushed open the door to this adja-

* Recorder's Court judge, sitting on the Court of Appeals by assignment.

cent room and found defendant sitting on a bed. This room was apparently Jamieson's bedroom. In the room with defendant officers found, in plain view, a scale, a compound commonly used in cutting cocaine, and a mirror with residue of white powder on it and a switchblade knife next to it.

Defendant was subsequently taken to the police station and questioned about his presence at the scene. The questioning followed the police's informing defendant of his *Miranda*[1] rights. Defendant initialed a *Miranda* card after each separate right was explained to him and defendant signed the card at the bottom. Defendant stated at trial that the signature on the card was his and that he understood his rights.

The single officer who interrogated defendant testified that defendant explained he was at the Jamieson residence to work out. Evidently there was some sort of a weight training center in the basement of the Jamieson home. The officer stated that defendant did not at any time during the interrogation request an attorney. About midway through the interrogation defendant was allowed to call his girlfriend. The officer was present during the conversation. Picking up on what was said in defendant's conversation with his girlfriend, the interrogating officer told defendant he did not believe his story. The officer testified that defendant then told the officer that he had taken a package to the Jamieson home, at Jamieson's request. The officer also testified that defendant told the officer that he had looked into the package and knew it contained cocaine.

Defendant testified that he never knew the package contained cocaine; however, he admitted that

[1] *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

he did deliver a package to the Jamieson home on the 13th.

Defendant explained that he knew Jamieson from high school; however, that was several years earlier. The two had recently met and discussed working out with each other. On November 11, 1986, defendant first went to Jamieson's home. Jamieson resided with his parents. On that occasion the two began a weight training exercise routine and discussed meeting again on the 13th.

Defendant testified that on the 13th, while at his girlfriend's apartment, he had a phone conversation with Jamieson and Jamieson explained to him that a friend, whom Jamieson's father did not get along with, had a package for Jamieson. Jamieson asked if the friend could leave the package with defendant and if defendant would then deliver it to Jamieson when he came over to work out. Defendant stated that he agreed to deliver the package, and it was arranged for the package to be dropped off into defendant's car, which was parked at his girlfriend's apartment. Defendant was expected at the Jamieson home within ninety minutes of the telephone conversation.

Defendant stated that when he left his girlfriend's apartment he checked his car and found a rolled up brown paper sack. Defendant retrieved the sack from the car and then walked to the Jamieson home. Defendant testified that he did not look in the sack and suspected nothing.

Defendant stated that he did not tell the interrogating officer that he looked in the bag. Defendant also testified that he requested an attorney during the interrogation but that the police officer disregarded this request and no attorney was provided. The interrogating officer disputes these claims. Defendant did not sign a written statement and no

video or audio recording was made of the interrogation.

## II

Defendant's first claim on appeal is that the trial court erred in denying his motion for a directed verdict on the charge of delivery of cocaine. Defendant argues that no rational trier of fact, on the evidence presented, could conclude that defendant knew and agreed to assist Jamieson in the delivery of cocaine to the undercover police officer.

Relying on the prosecution's theory that defendant was a mere aider and abettor, defendant argues that the prosecution failed to prove that defendant had the required intent necessary to support a conviction for delivery of cocaine, even as an aider and abettor. Therefore, defendant argues that the trial court erred in not directing a verdict in favor of defendant and this error requires reversal. We disagree.

In ruling on a motion for a directed verdict, the trial court must consider the evidence presented by the prosecution up to the time the motion is made, this evidence must be viewed in a light most favorable to the prosecution and the trial court must then determine whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt. *People v Hampton,* 407 Mich 354, 368; 285 NW2d 284 (1979); *People v Petrella,* 424 Mich 221; 380 NW2d 11 (1985).

Four elements are necessary to support a finding that a defendant possessed with intent to deliver 225 grams or more but less than 650 grams of a mixture containing cocaine: (1) the substance must

be shown to be cocaine; (2) the mixture containing the cocaine must weigh at least 225 grams, but less than 650 grams; (3) it must be shown defendant was not authorized to possess the substance; and (4) it must be shown defendant knowingly possessed the cocaine with intent to deliver. *People v Acosta,* 153 Mich App 504, 511-512; 396 NW2d 463 (1986), lv den 428 Mich 865 (1987). Defendant here only challenges whether there was sufficient proof of the fourth element.

As defendant states, the prosecution here was based on a theory of aiding and abetting. To support a finding that defendant aided and abetted in the commission of a crime the following three elements must be shown: (1) the crime charged was either committed by defendant or some other person; (2) defendant performed acts or gave encouragement which aided and assisted the commission of the crime; and (3) it must be shown that defendant intended the commission of the crime, or had knowledge that the principal intended its commission at the time of giving aid and encouragement. *Id.* at 512. Only the third element is called into question here.

Viewing the evidence presented by the prosecution in a light most favorable to the prosecution, the evidence showed: that defendant knew he was delivering cocaine to Jamieson, and that Jamieson expected it within ninety minutes; that defendant remained in a separate room from where the transaction took place but, when it came time for the transaction, Jamieson retrieved the cocaine from the room defendant was in, returning from that room with a clear plastic bag containing cocaine in his hands; that, when police found and arrested defendant in the bedroom, the police also found in plain view, a scale, a compound commonly used for cutting cocaine, and a mirror with

a white powder residue on it; and that the room defendant was found in was very small.

Viewing this evidence in a light most favorable to the prosecution, a rational trier of fact could conclude that defendant intended the commission of the crime, or had knowledge that Jamieson intended its commission. Here, circumstantial evidence and reasonable inferences arising from that evidence provided satisfactory proof that defendant intended the commission of the crime, or had knowledge that Jamieson intended its commission. *People v Acosta, supra* at 511. Therefore, we agree with the trial court. Defendant's motion for directed verdict was properly denied.

III

Defendant next argues that the prosecution violated his right to due process of law and his privilege against self incrimination by arguing in rebuttal that defendant's silence and his failure to make exculpatory statements to the police provided proof of defendant's guilt. In rebuttal argument the prosecution argued that, "if you believe that he was so adamant on insisting on his innocence to Officer Madigan and here before you, why in heaven's name did it take him, according to his own testimony, one hour and a half to tell Officer Madigan that he took the package." Defendant argues that this was an impermissible comment on his right to remain silent.

In support of his argument defendant relies on *People v Bobo,* 390 Mich 355; 212 NW2d 190 (1973), and *People v Jones,* 119 Mich App 164; 326 NW2d 411 (1982).

In *People v Bobo,* when arrested defendant exercised his constitutional right to remain silent, making no statement to the police. The prosecu-

tion was permitted, over objection, to ask defendant on cross-examination if he had informed police of exculpatory evidence, raised on direct examination, during his interrogation. The prosecutor was also permitted in closing argument to remark on defendant's failure to tell the police during his interrogation of subsequently claimed exculpatory evidence.

In *People v Bobo, supra* at 359, the Supreme Court stated:

> We will not condone conduct which directly or indirectly restricts the exercise of the constitutional right to remain silent in the face of accusation. "Nonutterances" are not statements. The fact that a witness did not make a statement may be shown only to contradict his assertion that he did.

In *People v Jones,* defendant was convicted of armed robbery. A Kentucky Fried Chicken outlet was robbed and the individual who later admitted to the actual robbery was one of four individuals, including defendant, who were apprehended within five minutes of the robbery while fleeing in an automobile. Defendant was found with the weapon used in the robbery tucked into her waistband.

At trial defendant testified that she saw the gun for the first time when someone in the car passed it to her when the police pulled the car over. She admitted having the gun; however, she denied having any prior knowledge of the robbery, or having anything to do with the robbery. The prosecution then questioned defendant about her failure to make a statement at the time of the arrest, other than her saying that she "didn't know anything about the robbery." The prosecution then argued during closing argument that if she were

telling the truth, defendant would have told her full story to the police at the time of her arrest. Citing *People v Bobo,* the Court in *Jones, supra* at 170, concluded: "Defendant's failure to make a full statement at the time of her arrest was not inconsistent with any subsequent statements which she did make." Consequently, the Court concluded that error occurred.

The facts in *Bobo* and *Jones* are distinguishable from those presented here. Here, defendant did make an extensive statement to the police. There was conflicting testimony at trial over the content of that statement. The interrogating police officer testified that at some point well into the interrogation defendant admitted that he delivered a package to Jamieson and that he looked inside the package and realized that it contained cocaine. Defendant testified that at sometime well into the interrogation he admitted to the officer that he delivered a package to Jamieson; however, defendant claimed that he did not know or suspect the contents of the package.

"[T]he *Bobo* rule is designed to protect two constitutional rights enjoyed by a criminal accused: the right to remain silent and the right to due process of law." *People v Staley,* 127 Mich App 38, 41; 338 NW2d 414 (1983). Defendant here freely gave up his right to remain silent, therefore the first constitutional right protected by *Bobo* is not called into question. Because defendant did not invoke his right to remain silent and testified that he did make a statement to the police and that he did deliver the package, it was not error or denial of due process of law for the prosecution in rebuttal argument to point out that, if defendant were telling the truth when he stated he did not know that the package contained cocaine, there was no reason for defendant not to promptly inform the

police that he did deliver a package to Jamieson. We agree with the analysis of the trial court that the prosecution's argument was not that defendant "should have said something but rather, if that in fact were the truth, it wouldn't have taken him an hour and a half to get it out."

A credibility contest was presented here between what defendant testified were his statements during his interrogation and what the interrogating officer testified were defendant's statements during interrogation. Defendant did not remain silent. *Bobo* and *Jones* are inapposite. There was no error in allowing the rebuttal argument.

IV

Defendant also claims error in the charge to the jury. Defendant claims the trial court erred by instructing the jury on the separate and distinct offense of possession of cocaine. Defendant argues that this gave the prosecution the chance to win a conviction for an offense not charged and claim victory when the jury compromised on what it presumed to be a lesser included offense. Defendant contends that the only facts that support a conviction for possession arise from the time frame when defendant delivered the package to Jamieson; however, since the information only charged defendant with the manufacture, delivery or possession with intent to manufacture or deliver which relates to the time of the sale to the undercover police officer, defendant was convicted of a crime for which he was not charged.

After the jury was instructed, including the instruction on the offense upon which defendant was convicted, the trial court asked defense counsel if he had any objection. Defense counsel replied in the negative.

A defendant has the right to have a jury pass on the evidence based on proper instructions. *People v Hughes,* 160 Mich App 117, 119; 407 NW2d 638 (1987). However, where defendant has not objected below, "this Court will not reverse the verdict absent manifest injustice, *e.g.,* where the omitted instruction pertains to a basic and controlling issue." *Id.*

Because defendant was charged with manufacturing, delivery or possession with intent to deliver we find no manifest injustice where defendant was convicted based on the instruction that he possessed cocaine.

v

Finally, defendant challenges his sentence as cruel and unusual punishment. Defendant was sentenced to twenty to thirty years imprisonment for his conviction of possession of 225 grams or more but less than 650 grams of a mixture containing cocaine.

Const 1963, art 1, § 16 prohibits the infliction of "cruel or unusual punishment." In *People v Lorentzen,* 387 Mich 167; 194 NW2d 827 (1972), the Supreme Court established a three-prong analysis for determining whether a given punishment is cruel and unusual. The first consideration is whether the punishment is proportionate to the crime. Next, an analysis of evolving standards of decency is considered. Finally, the prospects of rehabilitation must be considered.

Here, at the time of defendant's conviction, MCL 333.7403(2)(a)(ii); MSA 14.15(7403)(2)(a)(ii) provided for a minimum prison term of twenty years for possession of 225 grams or more but less than 650 grams of a mixture containing cocaine. Since defendant's conviction, the Legislature has amended the statute to provide for a minimim sentence of

not less than ten years, with the maximum sentence remaining thirty years. However, this amendment to the statute also gives the sentencing court discretion to depart from the minimum sentence requirement of § 7403(2)(a)(ii), "if the court finds on the record that there are substantial and compelling reasons to do so." MCL 333.7403(3); MSA 14.15(7403)(3).

Because of the Legislature's revision which lessened the previous mandatory minimum sentence (which the trial court here was constrained to follow in sentencing defendant), we conclude that the punishment defendant received was not proportionate to the crime. In the Legislature's revision, we find an attempt to make the punishment more proportionate to the crime and the criminal and a tacit admission that such was previously not the case. In the Legislature's addition of § 7403(3), we also find evidence of the Legislature's attempt to make the penalty more proportionate to the crime and the criminal and to allow the type of indeterminate sentencing found in this state for nearly every other criminal offense.

With regard to the evolving standards of decency analysis, as noted in Judge KELLY's dissent in *People v Harman,* 124 Mich App 93, 104; 333 NW2d 591 (1983), lv den 417 Mich 1100.45 (1983), only five of forty-nine other states provide a minimum sentence greater than four years.

With regard to the prospects of defendant's rehabilitation, we note the sentencing court's statement: "What I have before me is a young man who apparently had lived the life of a model citizen until this night in November, 1986."

Because of the actions of the Legislature, we remand to give the trial court the opportunity to resentence under the current statute.

Conviction affirmed, remanded for resentencing.