PEOPLE v SCHULTZ

PEOPLE v SAND

Docket Nos. 84788, 86348. Argued March 7, 1990 (Calendar Nos. 7-8). Decided August 29, 1990. Rehearings denied 436 Mich 1201.

David M. Schultz was convicted on April 28, 1987, by a jury in the Oakland Circuit Court, Hilda R. Gage, J., of possession of a mixture containing cocaine in an amount greater than 225 grams but less than 650 grams, and was sentenced on May 18, 1987, pursuant to MCL 333.7403(2)(a)(iii); MSA 14.15(7403)(2)(a)(iii). The Court of Appeals, MICHAEL J. KELLY, P.J., and SULLIVAN and M. J. SHAMO, JJ., affirmed the conviction, but remanded the case for resentencing under the 1988 amendment of the statute, 1988 PA 47, effective March 30, 1988, which reduced the mandatory minimum sentence and allowed a trial court to depart from the mandatory minimum for substantial and compelling reasons (Docket No. 101072).

Jeffrey F. Sand pled guilty on February 4, 1988, in the Macomb Circuit Court, Michael D. Schwartz, J., in accordance with a plea bargain, of conspiracy to deliver more than 50 grams but less than 225 grams of a mixture containing cocaine, and was sentenced on May 2, 1988, pursuant to MCL 333.7401(2)(a)(iii); MSA 14.15(7401)(2)(a)(iii). The Court of Appeals, HOLBROOK, JR., P.J., and MICHAEL J. KELLY and CAVANAGH, JJ., in an unpublished opinion per curiam, remanded the case for resentencing under the 1987 amendment of MCL 333.7401; MSA 14.15(7401), 1987 PA 275, effective March 30, 1988 (Docket No. 109768).

In each case, the people appeal.

In an opinion by Justice ARCHER, joined by Justices LEVIN and CAVANAGH, and an opinion by Justice BOYLE, the Supreme Court *held:*

The judgment of the Court of Appeals in each case is affirmed, and the cases are remanded to the trial courts for resentencing under the Public Health Code as amended.

Justice ARCHER, joined by Justices LEVIN and CAVANAGH, stated that the Legislature has the exclusive authority both to determine the terms of punishment imposed for violations of the criminal law and to provide that an ameliorative amendatory act applies prospectively to offenses committed after the

amendatory act takes effect. In the context of these cases, however, the Legislature did not intend to constrict the prospective operation of the amended Public Health Code; rather, it intended that cases pending in the trial court and those on direct appeal, where the issue is raised and preserved, on the date the ameliorative amendments took effect, were to be included within the ambit of the amended Public Health Code. The enactment of the general saving statute expressed the intent that conduct remains subject to punishment whenever a statute imposing criminal liability either is repealed outright or reënacted with modification, even though a specific saving clause has not been adopted. Both 1987 PA 275 and 1988 PA 47 reduced the mandatory minimum terms of imprisonment and provided a departure policy; 1989 PA 143, which restored the mandatory minimum terms, retained the policy.

The legislative mandate is clear: sentencing courts are authorized to exercise discretion and, in appropriate cases presenting substantial and compelling circumstances, to depart from the Public Health Code's mandatory minimum terms. The general saving statute and sentencing policies of this state do not indicate a contrary legislative intent that the defendants should be sentenced under the Public Health Code as it existed prior to amendment. The judgments of the Court of Appeals in both cases should be affirmed and the cases remanded for resentencing under the Public Health Code as amended.

Justice BOYLE concurred in the result reached by Justice ARCHER.

*People v Schultz* and *People v Sand,* affirmed.

Justice BRICKLEY, joined by Chief Justice RILEY and Justice GRIFFIN, stated that 1987 PA 275 and 1988 PA 47 were intended to operate prospectively only. The penalty provisions in effect at the time each offense was committed should govern the sentence imposed.

Statutes are to be applied prospectively unless it is clear that the Legislature intended otherwise. While 1987 PA 275 and 1988 PA 47 contain no expression of retroactive or prospective operation, several factors establish that only prospective application was intended. Both acts are penalty provisions under the controlled substance act which are included in the Public Health Code. The code explicitly provides that MCL 8.4a; MSA 2.214, the general saving statute, which consistently has been construed to provide that the penalty provisions of an original act will apply to all offenses committed prior to the effective date of an amendatory act reducing those penalties, applies to the code provisions. By virtue of MCL 8.4a; MSA 2.214, an

amendatory act that is silent with respect to application should operate prospectively only. Thus, the penalty provisions of the statutes in effect on the dates the defendants committed their offenses should govern their sentences.

In construing a statute, a court may presume that the Legislature, in amending a statute, acted with knowledge of existing law, in this case, with knowledge of the construction of MCL 8.4a; MSA 2.214 against retroactive application of criminal penalties when it enacted 1987 PA 275 and 1988 PA 47. In the past, when the Legislature has intended to make an amendment of an act which reduced penalties retroactive, it has done so expressly. The general saving statute is evidence of a legislative intent to preserve both the prosecution and punishment provisions of the statute in effect at the time an offense was committed. A review of the legislative history of 1987 PA 275 and 1988 PA 47 reveals that both were enacted out of a concern that the penalties for controlled substance offenses should be strengthened. In addition, the Legislature subsequently enacted 1989 PA 143, which reinstated the original mandatory minimum prison terms of MCL 333.7401; MSA 14.15(7401) and MCL 333.7403; MSA 14.15(7403). In light of the purpose and history of the relevant amendments, and in the absence of any expression to the contrary, it must be concluded that the Legislature intended, by virtue of the general saving statute, that the statutes in effect at the time the offenses were committed were to govern the issue of sentencing.

172 Mich App 674; 432 NW2d 742 (1988) affirmed.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Richard Thompson,* Prosecuting Attorney, *Robert C. Williams,* Chief, Appellate Division, and *Thomas S. Richards,* Assistant Prosecuting Attorney, for the people in *Schultz.*

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Carl J. Marlinga,* Prosecuting Attorney, and *Robert John Berlin,* Chief Appellate Lawyer, for the people in *Sand.*

*Faintuck, Shwedel & Wolfram* (by *William G. Wolfram*) for the defendant in *Schultz.*

*Metry, Metry & Sanom* (by *Gilbert E. Metry* and *Dean C. Metry*) for the defendant in *Sand.*

Amicus Curiae:

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *G. Michael Hocking,* Prosecuting Attorney, and *William M. Worden,* Assistant Prosecuting Attorney, for the people.

ARCHER, J. We granted leave to appeal to determine whether the defendants should be sentenced under MCL 333.7401; MSA 14.15(7401) and MCL 333.7403; MSA 14.15(7403) as amended subsequent to the dates their crimes were committed. We would affirm the judgment of the Court of Appeals.

I

### A. *PEOPLE v SCHULTZ*

Defendant David M. Schultz was tried and convicted in the Oakland Circuit Court of transporting ten ounces of cocaine. On November 13, 1986, Schultz, a twenty-five-year-old Bloomfield Hills middle school teacher with no prior criminal record, was arrested at the home of Daniel Jamieson when the police raided the house after an undercover officer purchased cocaine from Jamieson.

Defendant was charged with the manufacture, delivery or possession with intent to deliver more than 225 grams but less than 650 grams of cocaine.[1] The prosecution's theory of the case was that defendant aided and abetted Jamieson in the cocaine sale to the undercover police officer.[2]

At trial, defendant testified that on the night of

---

[1] MCL 333.7401(2)(a)(ii); MSA 14.15(7401)(2)(a)(ii).

[2] Jamieson was similarly charged, but absconded while on bail. To date, he has not been apprehended.

his arrest, he was at his girl friend's apartment when Jamieson telephoned. Jamieson asked defendant to pick up a package and deliver it to him. Defendant agreed. Jamieson arranged for a friend to place the package in defendant's car, which was parked outside his girl friend's apartment. Defendant then retrieved and delivered the package to Jamieson's house. Defendant and Jamieson were arrested when the police raided the house after Jamieson sold cocaine to an undercover police officer.[3]

Defendant also testified at trial that, although he delivered a package to Jamieson, he did not know its contents. In contrast, a police officer testified that during postarrest interrogation,[4] defendant told him he knew the package contained cocaine.

Defendant was convicted of possession of more than 225 grams but less than 650 grams of cocaine on April 28, 1987.[5] On May 18, 1987, he was

---

[3] Defendant was arrested in a basement room adjacent to the one in which Jamieson sold the cocaine to the undercover police officer. 172 Mich App 674, 677; 432 NW2d 742 (1988). Inside the room, the police found in plain view a chemical compound used to cut cocaine, a scale, a mirror covered with white powder residue, and a switch blade knife. *Id.*

[4] Following his arrest, defendant waived his *Miranda* rights. *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

[5] MCL 333.7403(2)(a)(ii); MSA 14.15(7403)(2)(a)(ii). At the time of defendant's arrest, trial, and sentencing, § 7403 provided:

(1) A person shall not knowingly or intentionally possess a controlled substance unless the substance was obtained directly from, or pursuant to, a valid prescription or order of a practitioner while acting in the course of the practitioner's professional practice, or except as otherwise authorized by this article.

(2) A person who violates this section as to:

(a) A controlled substance classified in schedule 1 or 2 which is either a narcotic drug or described in section 7214(a)(iv), and:

\* \* \*

(ii) Which is in an amount of 225 grams or more, but less

sentenced to twenty to thirty years imprisonment. As it existed at the time of defendant's conviction and sentencing, MCL 333.7403(2)(a)(ii); MSA 14.15(7403)(2)(a)(ii), the sentencing statute, provided a mandatory twenty-year minimum term of imprisonment. The trial judge reluctantly imposed this sentence, noting on the record that the statute required the court to do so.[6]

Defendant appealed, contesting both his conviction and sentence. The Court of Appeals affirmed the conviction. 172 Mich App 674; 432 NW2d 742 (1988). The Court, however, remanded the case to the trial court for resentencing in light of 1988 PA 47, which became effective March 30, 1988, some ten months after defendant was sentenced. 1988 PA 47 amended MCL 333.7403; MSA 14.15(7403), the statute under which defendant had been convicted and sentenced, and reduced the mandatory minimum term of imprisonment from twenty years to ten.[7] 1988 PA 47 also authorized the trial

than 650 grams, of any mixture containing that substance is guilty of a felony and shall be imprisoned for not less than 20 years nor more than 30 years.

Cocaine is a controlled substance classified in schedule 2. MCL 333.7214(a)(iv); MSA 14.15(7214)(a)(iv).

[6] [I]f I had the discretion I would not impose a twenty-year minimum sentence nor anything even close to it.

[7] 1988 PA 47 provides:

(1) A person shall not knowingly or intentionally possess a controlled substance unless *the controlled* substance was obtained directly from, or pursuant to, a valid prescription or order of a practitioner while acting in the course of the practitioner's professional practice, or except as otherwise authorized by this article.

(2) A person who violates this section as to:

(a) A controlled substance classified in schedule 1 or 2 which is either a narcotic drug or described in section 7214(a)(iv), and:

* * *

(ii) Which is in an amount of 225 grams or more, but less

court to depart from the ten-year minimum term for substantial and compelling reasons.

The prosecutor subsequently filed an application for leave to appeal. We granted leave on April 11, 1989, to determine whether the Court of Appeals erroneously ordered the trial court to resentence defendant under MCL 333.7403; MSA 14.15(7403) as amended by 1988 PA 47. 432 Mich 892 (1989).

### B. PEOPLE v SAND

Defendant Jeffrey Francis Sand pled guilty of conspiracy to deliver more than 50 grams but less than 225 grams of cocaine for his role in a scheme to supply cocaine to an undercover police officer.[8] At the plea hearing held on February 4, 1988, defendant stated that he was introduced to an undercover officer and agreed to supply him with cocaine in exchange for money. Defendant agreed to go to Florida and obtain the cocaine. While in Florida, but before he purchased the cocaine, defendant reneged on his part of the bargain. Defendant was subsequently arrested and brought back to Michigan to face prosecution.

At the time defendant committed the offense and pled guilty, MCL 333.7401(2)(a)(iii); MSA 14.15(7401)(2)(a)(iii) provided a mandatory ten-year minimum term and a maximum term of twenty

___

than 650 grams, of any mixture containing that *controlled substance* is guilty of a felony and shall be imprisoned for not less than *10* years nor more than 30 years.

\* \* \*

*(3) The court may depart from the minimum term of imprisonment authorized under subsection (2)(ii), (iii), or (iv) if the court finds on the record that there are substantial and compelling reasons to do so.* [Emphasis added.]

[8] MCL 750.157a; MSA 28.354(1) and MCL 333.7401(2)(a)(iii); MSA 14.15(7401)(2)(a)(iii).

years or lifetime probation.[9] About one month prior to defendant's scheduled sentencing date, 1987 PA 275 took effect and amended § 7401(2)(a)(iii) by reducing the minimum term of imprisonment from ten years to five.[10] At defendant's sen-

---

[9] Section 7401 provided:

(1) Except as authorized by this article, a person shall not manufacture, deliver, or possess with intent to manufacture or deliver, a controlled substance. A practitioner licensed by the administrator under this article shall not dispense, prescribe, or administer a controlled substance for other than legitimate and professionally recognized therapeutic or scientific purposes or outside the scope of practice of the practitioner, licensee, or applicant.

(2) A person who violates this section as to:

(a) A controlled substance classified in schedule 1 or 2 which is either a narcotic drug or described in section 7214(a)(iv) and:

* * *

(iii) Which is in an amount of 50 grams or more, but less than 225 grams, of any mixture containing that substance is guilty of a felony and shall be either imprisoned for not less than 10 years nor more than 20 years or placed on probation for life.

[10] In addition to providing a departure policy and eliminating the lifetime probation provision, 1987 PA 275 provided:

(1) Except as authorized by this article, a person shall not manufacture, deliver, or possess with intent to manufacture or deliver, a controlled substance. A practitioner licensed by the administrator under this article shall not dispense, prescribe, or administer a controlled substance for other than legitimate and professionally recognized therapeutic or scientific purposes or outside the scope of practice of the practitioner, licensee, or applicant.

(2) A person who violates this section as to:

(a) A controlled substance classified in schedule 1 or 2 which is either a narcotic drug or described in section 7214(a)(iv) and:

* * *

(iii) Which is in an amount of 50 grams or more, but less than 225 grams, of any mixture containing that controlled substance is guilty of a felony and shall be imprisoned for not less than 5 years nor more than 20 years.

* * *

(4) The court may depart from the minimum term of imprisonment authorized under subsection (2)(a)(ii), (iii), or (iv) if the

tencing on May 2, 1988, the trial court sentenced defendant to a term of ten to twenty years imprisonment.

Defendant subsequently filed a claim of appeal, and the Court of Appeals unanimously reversed in an unpublished per curiam decision decided May 22, 1989 (Docket No. 109768). The Court held that defendant should have been sentenced under § 7401 as amended by 1987 PA 275.

The people subsequently filed an application for leave to appeal, which we granted on September 27, 1989.

## II

The people argue in both cases that criminal defendants are to be sentenced under the relevant statute as it existed on the date the offense was committed. The prosecution claims that, absent an express contrary statement of legislative intent, ameliorative acts that amend sentencing statutes and mitigate the authorized terms of punishment apply prospectively to all offenses committed subsequent to the date the amendment takes effect.

Insofar as the prosecution maintains that the question presented is one of legislative intent, we agree. Under the constitution of this state, the people have vested in the Legislature the exclusive authority to determine the terms of punishment imposed for violations of the criminal law. Const 1963, art 4, § 45; *In re Callahan,* 348 Mich 77, 80; 81 NW2d 669 (1957); *People v Coles,* 417 Mich 523, 538; 339 NW2d 440 (1983). The Legislature also has the constitutional authority to provide that an ameliorative amendatory act applies prospectively

court finds on the record that there are substantial and compelling reasons to do so.

to offenses committed after the amendatory act takes effect. In the context of the two cases presented before this Court, however, we disagree that the Legislature intended to exercise this power and so narrowly constrict the prospective operation of the amended Public Health Code. In light of the Legislature's decision that the current terms of punishment authorized in the Public Health Code constitute an appropriate social response to narcotics crimes and abuse, we would hold that the Legislature intended cases pending in the trial court and those on direct appeal, where the issue is raised and preserved, on the date the ameliorative amendments took effect to be included within the ambit of the amended Public Health Code. To conclude otherwise would be inconsistent with the underlying purpose of the general saving statute and the sentencing policies of this state.

Despite the intent of the Legislature expressed in 1987 PA 275, 1988 PA 47, and 1989 PA 143, all of which mitigate the terms of punishment authorized in the Public Health Code for the manufacture, delivery, or possession of controlled substances,[11] the prosecution submits that defendants Schultz and Sand should be sentenced under MCL 333.7401; MSA 14.15(7401) and MCL 333.7403; MSA 14.15(7403) as those statutes existed when the defendants committed their crimes. The people reason that both the action to enforce criminal liability and the terms of punishment authorized in the statutes prior to amendment remain in effect by operation of the general saving statute, MCL 8.4a; MSA 2.214. Section 8.4a provides that

[11] In 1989 PA 143, the Legislature restored the mandatory minimum terms as they were enacted in the 1978 Public Health Code prior to amendment by 1987 PA 275 and 1988 PA 47. 1989 PA 143, however, retained the departure policy adopted in the two ameliorative amendments.

the repeal of any statute under which a liability, forfeiture, or penalty is incurred does not discharge that liability, forfeiture, or penalty, absent a contrary statement of legislative intent:

> The repeal of any statute or part thereof shall not have the effect to release or relinquish any penalty, forfeiture, or liability incurred under such statute or any part thereof, unless the repealing act shall so expressly provide, and such statute and part thereof shall be treated as still remaining in force for the purpose of instituting or sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture or liability.

Although it is clear that the two defendants before this Court have incurred criminal liability for which they may be punished, neither the purpose of § 8.4a nor the relevant case law from the Court of Appeals lends persuasive support to the prosecution's argument that the Legislature intended the terms of punishment authorized prior to amendment in MCL 333.7401; MSA 14.15(7401) and MCL 333.7403; MSA 14.15(7403) to remain in effect against these defendants.

The history surrounding § 8.4a indicates that the Legislature enacted the general saving statute in response to a factual scenario vastly different from that presented before our Court today. Section 8.4a was specifically adopted to abrogate an anomaly resulting from the interplay between the common-law abatement doctrine and the constitutional Ex Post Facto Clause. This Court held in *People v Lowell,* 250 Mich 349; 230 NW 202 (1930), that at common law the repeal[12] of a criminal statute barred the prosecution of all pending and subsequent cases authorized under the repealed

---

[12] The term "repeal" also includes the reënactment of the same statute with modification. *Id.* at 354.

statute in the absence of a saving clause or general saving statute. In *Lowell*, the defendant was charged with violating the Michigan prohibition act. Subsequently, the act was amended to increase the authorized maximum term of punishment. We affirmed the lower court order granting defendant's motion to quash the bindover and concluded that the prosecution could no longer continue. Under the common-law abatement doctrine,[13] the act authorizing the prosecution had been repealed by the amendatory act. *Id.* at 352. Likewise, prosecution under the amended act, which provided a term of punishment that had been increased subsequent to the date of offense, was barred by the constitutional Ex Post Facto Clause. In order to alleviate this anomalous situation where a criminal defendant could no longer be prosecuted under any law even though his conduct was proscribed under the statute both before and after amendment, we invited the Legislature to enact a general saving statute.[14] Subsequently, the Legislature responded by enacting MCL 8.4a; MSA 2.214.

By enacting § 8.4a, the Legislature has expressed its intent that conduct remains subject to punishment whenever a statute imposing criminal liability either is repealed outright or reënacted with modification, even though a specific saving clause has not been adopted.[15] While § 8.4a does indicate

---

[13] See, generally, note, *Today's law and yesterday's crime: Retroactive application of ameliorative criminal legislation,* 121 U Pa L R 120, 121 (1972).

[14] We suggest to the legislature that, if this ruling does not accord with its actual intention, a similar situation may be avoided in the future by the enactment of a general saving statute, covering such cases and with such provisions as the legislature may determine. [*Id.* at 361.]

[15] Prosecutions completed prior to the repeal of a criminal liability

that conduct remains subject to punishment, it does not indicate that the Legislature intended the statute prior to amendment to provide the terms of punishment where an amendatory act mitigates the authorized terms of punishment but continues to proscribe the same conduct. Although the dissent correctly notes that other jurisdictions have rejected this view, see *post,* pp 542-543, to conclude that the Michigan general saving statute also requires the defendants to be sentenced under the terms of punishment authorized in the statutes prior to amendment would be to gloss over the historical and philosophical underpinnings of § 8.4a.

The decisions of our Court of Appeals also support the view that the Legislature intended § 8.4a to prevent technical abatements from barring actions to enforce criminal liability and thereby excusing offenders from punishment. While the cases do illustrate the instances in which the Legislature did not intend to excuse criminal defendants from prosecution, they do not support the proposition that the Legislature enacted § 8.4a to save the terms of punishment in effect on the date of offense when an ameliorative amendment was subsequently enacted and the case had not yet reached final disposition before our Court. Thus, in *People v McDonald,* 13 Mich App 226; 163 NW2d 796 (1968), where an ameliorative amendment eliminated the distinction between nighttime and daytime breaking and entering and reduced the maximum authorized term of punishment, the Court properly rejected the defendant's argument that prosecution was precluded under the statute as it existed prior to amendment. In light of § 8.4a

statute remained unaffected by the common-law abatement doctrine. *In re Jerry,* 294 Mich 689, 691; 293 NW 909 (1940); *People v McDonald,* 13 Mich App 226, 229-230; 163 NW2d 796 (1968).

and the amendatory act, which also proscribed the same conduct as the statute prior to amendment, the Court correctly reasoned that the Legislature did not intend to excuse the defendant from criminal prosecution. Likewise, this analysis was also properly followed in *People v Gravedoni,* 172 Mich App 195; 431 NW2d 221 (1988), where the Court of Appeals correctly held that the defendant's conduct was still subject to punishment notwithstanding an ameliorative amendment enacted subsequent to the date of offense. See also *People v Ulysee Gibson,* 71 Mich App 220; 247 NW2d 357 (1976). Cf. *People v Dalby,* 181 Mich App 673; 451 NW2d 201 (1989).

The same statutes at issue in *McDonald, supra,* were also the subject of the litigation in *People v Poole,* 7 Mich App 237; 151 NW2d 365 (1967). In that case, however, the defendant did not claim that the prosecution was barred because his conduct was no longer subject to punishment. Rather, the defendant argued that he should be sentenced under the terms of the amended statute, which reduced the maximum term of punishment. Since the defendant's judgment of conviction was no longer subject to direct appellate review and had become final when he moved to be resentenced, the Court correctly held that the defendant was properly sentenced under the statute as it existed prior to amendment because the common-law abatement doctrine did not affect completed prosecutions. See also *People v Dickerson,* 17 Mich App 201; 169 NW2d 336 (1969).

The courts of other states that have adopted general saving statutes also hold that, in the absence of a contrary statement of legislative intent, criminal defendants are to be sentenced under an ameliorative amendatory act that is enacted subsequent to the date of offense and becomes effective

during the pendency of the prosecution.[16] This rule recognizes that the constitutional authority to determine sentencing policies rests exclusively with the Legislature and not the courts. It should likewise be the rule in Michigan since there is every reason to conclude that the Legislature intended the amended Public Health Code to apply to defendants before our Court. Both 1987 PA 275 and 1988 PA 47 reduce the mandatory minimum terms of imprisonment and provide a departure policy. Although in 1989 PA 143 the Legislature restored the mandatory minimum terms, the departure policy was retained.[17] Thus, the legislative mandate is clear: The sentencing courts of this state are authorized to exercise discretion and, in appropriate cases presenting substantial and compelling circumstances, to depart from the Public Health Code's mandatory minimum terms.

In their capacity as representatives of the people of this state, the members of the House and the Senate have determined that an appropriate social response to the menace of narcotics trafficking and abuse is to vest in the trial courts a limited degree of discretion to determine whether the legitimate goals of indeterminate sentencing will be promoted by imposing the mandatory minimum terms authorized in the Public Health Code. Indeterminate sentences are to be individually tailored, *People v Coles, supra* at 537, and the availability of judicial discretion is an integral aspect of indeterminate sentencing, *id.* at 539. Four factors may be taken into consideration to determine the appropriateness of a sentence: rehabilitation, deterrence, the

[16] See, e.g., *In re Estrada,* 63 Cal 2d 740; 48 Cal Rptr 172; 408 P2d 948 (1965); *State v Coolidge,* 282 NW2d 511 (Minn, 1979); *People v Oliver,* 1 NY2d 152; 151 NYS2d 367; 134 NE2d 197 (1956); *People v Festo,* 96 AD2d 765; 463 NYS2d 444 (1983).

[17] 1989 PA 143, amending MCL 333.7401(4); MSA 14.15(7401)(4) and MCL 333.7403(3); MSA 14.15(7403)(3).

protection of society, and punishment. *People v
Snow,* 386 Mich 586, 592; 194 NW2d 314 (1972).
Because the Public Health Code before and after
amendment continues to proscribe the same con-
duct for which defendants Schultz and Sand were
convicted, it is clear that deterrence, the certainty
of punishment, and the other goals of indetermi-
nate sentencing will continue to be promoted by
sentencing the defendants under the terms pro-
vided in the ameliorative amendatory acts. Fair-
ness will also be promoted since the trial courts
would be better able to tailor a sentence to fit the
needs of the individual defendant and society as
well.

Defendant Schultz is precisely the type of indi-
vidual the Legislature envisioned when the amelio-
rative amendments were enacted: A twenty-five-
year-old middle school teacher with no prior crimi-
nal record. As this Court noted in *People v Lorent-
zen,* 387 Mich 167, 180; 194 NW2d 827 (1972), the
ultimate goal of sentencing in this state is not to
exact vengeance,[18] but to protect society through
just and certain punishment reasonably calculated
to rehabilitate and thereby " 'convert bad citizens
into good citizens . . . .' " Quoting *People v Cook,*
147 Mich 127, 132; 110 NW 514 (1907). Thus,
although the Legislature has enacted a departure
policy in order to more equitably promote the
sentencing policies of this state, whether the trial
court would in fact find substantial and compelling
reasons to depart from the mandatory minimum

---

[18] As we noted in *People v McFarlin,* 389 Mich 557, 574; 208 NW2d
504 (1973), "The modern view of sentencing is that the sentence
should be tailored to the particular circumstances of the case and the
offender in an effort to balance both society's need for protection and
its interest in maximizing the offender's rehabilitative potential.
While the resources allocated for rehabilitation may be inadequate
and some persons question whether rehabilitation can be achieved in
the prison setting, this view of sentencing is the present policy of the
state."

term, as it indicated it would in *Schultz*,[19] or not, as in *Sand*,[20] is irrelevant.

Our general saving statute was adopted to amend a technically correct but logically absurd result that arose from a legislative oversight. To ignore the plain intent of the Legislature in this case would lead to an equally anomalous result. Consequently, we would merely hold that where, as in this case, the clear intent of the Legislature is to vest discretion in the trial courts to determine whether a departure from the mandatory minimum terms authorized in the Public Health Code is warranted, the general saving statute and sentencing policies of this state do not indicate a contrary legislative intent that the defendants should be sentenced under the Public Health Code as it existed prior to amendment.

We would therefore affirm the judgment of the Court of Appeals in both cases and remand for resentencing under the Public Health Code as amended.

LEVIN and CAVANAGH, JJ., concurred with ARCHER, J.

BOYLE, J. (*concurring*). I concur in Justice ARCHER's result for these reasons:

a) I believe that had the Legislature thought of what they wanted done this result would have been their answer.

b) I have confidence that the trial judiciary of this state will apply today's decision in a manner that implements a public policy that decrys the scourge of drugs while reflecting, in appropriate cases, the equally important belief that only the

---

[19] See n 6.

[20] Mr. Sand, this Court doesn't have any sympathy for you.

rarest individual is wholly bereft of the capacity for redemption.

BRICKLEY, J. (*dissenting*). In these cases, consolidated for purposes of appeal, we are asked to determine whether the Court of Appeals erred in ordering the resentencing of defendant Schultz under MCL 333.7403; MSA 14.15(7403), as amended by 1988 PA 47, and the resentencing of defendant Sand under MCL 333.7401; MSA 14.15(7401), as amended by 1987 PA 275.

In both *People v Schultz* and *People v Sand*, we would hold that the Court of Appeals erred in ordering resentencing. Thus, we would reverse the Court of Appeals decisions and reinstate the decisions of the respective trial courts.

### I. FACTS AND PROCEEDINGS

#### A. *PEOPLE v SCHULTZ*

On November 13, 1986, defendant David M. Schultz transported ten ounces of cocaine to the scene of the delivery where it was sold by another individual to an undercover officer for $10,000. He was initially charged with manufacture, delivery, or possession with the intent to manufacture or deliver more than 225 grams but less than 650 grams of a mixture containing cocaine pursuant to MCL 333.7401(2)(a)(ii); MSA 14.15(7401)(2)(a)(ii). On April 28, 1987, he was convicted by a jury in the Oakland Circuit Court of possession of a mixture containing cocaine in an amount greater than 225 grams but less than 650 grams pursuant to MCL 333.7403(2)(a)(ii); MSA 14.15(7403)(2)(a)(ii).

Schultz was sentenced to a term of twenty to thirty years imprisonment on May 18, 1987, as required by MCL 333.7403(2)(a)(ii); MSA

14.15(7403)(2)(a)(ii). On June 5, 1987, he appealed the conviction to the Michigan Court of Appeals. While that appeal was pending, the Legislature amended § 7403(2)(a)(ii).[1] Among other changes, the amendatory act reduced the mandatory minimum sentence from twenty to ten years,[2] and added a subsection giving the sentencing court discretion to depart from the mandatory minimum "if the court finds on the record that there are substantial and compelling reasons to do so."[3]

On November 7, 1988, the Michigan Court of Appeals affirmed the defendant's conviction. 172 Mich App 674; 432 NW2d 742 (1988). However, the Court remanded the case to the trial court for resentencing under the 1988 amendment of MCL 333.7403; MSA 14.15(7403). Schultz had challenged his sentence as being cruel and unusual punishment but did not argue that the new law should be applied retroactively. The Court of Appeals, however, concluded that the revision of MCL 333.7403; MSA 14.15(7403), reducing the mandatory minimum sentence and allowing for departure from those mandatory minimums for substantial and compelling reasons, evidenced a legislative intent "to make the punishment more proportionate to the crime and the criminal and [was] a tacit admission [by the Legislature] that such was previously not the case." *Schultz, supra* at 687.

On April 11, 1989, this Court granted the people's application for leave to appeal, limited to the issue whether the Court of Appeals erred by ordering resentencing under the 1988 amendment of

---

[1] 1988 PA 47, effective March 30, 1988.

[2] 1988 PA 47 also removed the lifetime probation option under subsection (2)(a)(iii) and reduced the mandatory minimum from ten to five years; it rewrote subsection (2)(a)(iv) and added subsection (2)(a)(v) providing stronger penalties for offenses involving controlled substances in small quantities.

[3] MCL 333.7403(3); MSA 14.15(7403)(3).

MCL 333.7403; MSA 14.15(7403). 432 Mich 892 (1989).

On June 29, 1989, the Legislature again amended the penalty provisions for the instant offense, restoring the initial mandatory minimum sentence of twenty years. 1989 PA 143, effective September 28, 1989.

### B. PEOPLE v SAND

On February 4, 1988, defendant Jeffrey Francis Sand pled guilty of conspiracy to deliver more than 50 grams but less than 225 grams of a mixture containing cocaine pursuant to MCL 750.157a; MSA 28.354(1) and MCL 333.7401(2)(a)(iii); MSA 14.15(7401)(2)(a)(iii). The factual basis of the plea was defendant's admission that on February 3, 1986, he entered into an agreement to go to Florida and purchase cocaine for delivery to another individual who was an undercover narcotics agent. Sand originally was charged with conspiracy to deliver over 225 grams but less than 650 grams of a mixture containing cocaine pursuant to MCL 750.157a; MSA 28.354(1) and MCL 333.7401(2)(a)(ii); MSA 14.15(7401)(2)(a)(ii). However, because of his coöperation with the police in another drug investigation, a plea agreement was reached whereby defendant was allowed to plead guilty of MCL 333.7401(2)(a)(iii); MSA 14.15(7401)(2)(a)(iii) which mandated a lower mandatory minimum prison term and also offered the optional sentence of lifetime probation. On May 2, 1988, Sand was sentenced to a term of ten to twenty years in prison.[4]

---

[4] The sentencing judge stated that his reason for imposing the ten-year sentence and not lifetime probation stemmed from this defendant's prior history showing a consistent involvement with drugs, i.e., he committed the instant offense after a prior drug charge was

On June 21, 1988, this defendant appealed his sentence, claiming for the first time that he should have been sentenced under the 1987 amendment of MCL 333.7401; MSA 14.15(7401), which eliminated the lifetime probation option, reduced the mandatory minimum prison term from ten years to five years, and also gave the sentencing court discretion to depart from the mandatory minimum sentence when there are substantial and compelling reasons to do so.[5] The Court of Appeals, on May 22, 1989, remanded the case for resentencing under the penalty provisions in effect at the date of sentencing.[6] On September 27, 1989, this Court granted the people's application for leave to appeal, consolidating it with the appeal in *People v Schultz,* 433 Mich 879 (1989). On June 29, 1989, the Legislature once again amended the penalty provisions for the instant offense, restoring the initial mandatory minimum sentence of ten years, but not the lifetime probation option. 1989 PA 143, effective September 28, 1989.

## II. STATUTORY RULES OF CONSTRUCTION

We begin by noting that Michigan adheres to the well-established rule of construction that statutes are to apply prospectively unless it is clear

dismissed on the basis of his coöperation with the police in yet another drug investigation.

[5] While defense counsel at sentencing acknowledged the change in the penalty provisions, he did not argue for its application in this case. In fact, he argued to the contrary, i.e., that lifetime probation was authorized by statute and would be an appropriate penalty for this defendant.

In general, a defendant who voluntarily pleads guilty while represented by counsel waives all nonjurisdictional objections. *People v Johnson,* 396 Mich 424; 240 NW2d 729 (1976), cert den 429 US 951 (1976). However, since the prosecution did not raise the question of preservation of the issue, we express no opinion on this matter.

[6] *People v Sand,* unpublished opinion per curiam of the Court of Appeals, decided May 22, 1989 (Docket No. 109768).

that the Legislature intended otherwise.[7] The same is true even in the absence of constitutional obstacles to retroactive operation.[8] This rule applies equally as well to criminal statutes and "affords a degree of certainty to the administration of criminal justice . . . ."[9] Thus, our inquiry focuses on whether the Legislature intended the amendments of MCL 333.7401; MSA 14.15(7401) and MCL 333.7403; MSA 14.15(7403) to operate retroactively.

### III. DISCUSSION

The amendatory acts at issue here contain no expression of retroactive or prospective operation.[10] However, several factors establish that the Legislature intended prospective operation only.

### A

First, we note that MCL 333.7401; MSA 14.15(7401) and MCL 333.7403; MSA 14.15(7403) are penalty provisions set out under the controlled substance act which is included in the Public Health Code, 1978 PA 368. Section 25205 of that act explicitly provides that Michigan's general saving statute "section 8.4a of the Michigan Compiled Laws, is applicable to this code." MCL 333.25205; MSA 14.15(25205). Thus, it is evident that the Legislature intended that MCL 8.4a; MSA 2.214 be read along with any amendments to the

[7] *In re Lambrecht,* 137 Mich 450; 100 NW 606 (1904); *In re Davis Estate,* 330 Mich 647; 48 NW2d 151 (1951). See 21 Michigan Law & Practice, Statutes, § 105, pp 130-135.

[8] *In re Davis Estate,* n 7 *supra* at 651, quoting *Detroit Trust Co v Detroit,* 269 Mich 81; 256 NW 811 (1934).

[9] *People v Osteen,* 46 Mich App 409, 413; 208 NW2d 198 (1973), lv den 390 Mich 760 (1973).

[10] 1987 PA 275, amending MCL 333.7401; MSA 14.15(7401), and 1988 PA 47, amending MCL 333.7403; MSA 14.15(7403).

penalty provisions of the controlled substance act unless it expressly provided otherwise in those amendments.

MCL 8.4a; MSA 2.214 was adopted by the Legislature to avoid application of the common-law rule set out in *People v Lowell,* 250 Mich 349, 353; 230 NW 202 (1930), that absent a saving clause or general saving statute, the repeal of a penal statute would operate "to defeat all pending prosecutions under the repealed statute." That general saving clause consistently has been construed to mean that the penalty provisions of an original act will apply to all offenses committed prior to the effective date of an amendatory act reducing those penalties.[11]

Thus, in a series of cases, the Court of Appeals considered a situation similar to that presented here, i.e., the appropriateness of sentencing a defendant charged with breaking and entering in the nighttime after an amendment of MCL 750.110; MSA 28.305, eliminated the distinction between daytime and nighttime breaking and entering, and, in effect, reduced the maximum penalty to ten years. In *People v Poole,* 7 Mich App 237, 243; 151 NW2d 365 (1967), the Court stated that "the sentence or punishment imposed is that prescribed by the statute in force at the time of the commission of a crime," and "as a general rule, amendments to criminal statutes with respect to sentence or punishment are not retroactive."

Next, in *People v McDonald,* 13 Mich App 226,

---

[11] For example, in 1947, the Attorney General published an opinion addressing the issue whether the lack of a saving clause in an amendatory act reducing the offense of negligent homicide from a felony to a misdemeanor precluded either prosecution as a felony or imposition of the former punishment for those who committed the offense prior to the effective date of the ameliorative statute. The opinion concluded that the general saving clause would allow both a felony prosecution and imposition of the former penalty. OAG, 1947-1948, No 631, p 506 (November 4, 1947).

229; 163 NW2d 796 (1968), lv den 381 Mich 795 (1968), the Court of Appeals addressed the defendant's claim that prosecutions for breaking and entering in the nighttime committed before the " 'repeal' were barred by the legislative action." The *McDonald* Court relied on the general saving statute and held that because the amended act "does not expressly relinquish any penalty incurred under the nighttime provision . . . [it] does not defeat prosecution of those who, before the 1964 act's effectiveness, violated the former provision by breaking and entering in the nighttime." *Id.* at 230.

The following year, in *People v Dickerson,* 17 Mich App 201; 169 NW2d 336 (1969), the Court of Appeals addressed more specifically the issue whether the penalty provisions of the amended act were applicable to offenses committed prior to its effective date. The defendant noted that under the amended act the fifteen-year maximum penalty could be imposed only for breaking and entering an occupied dwelling house. Because his guilty plea and conviction were for breaking and entering an unoccupied building, the defendant argued his sentence of eighteen months to fifteen years was erroneous and should be reduced. The *Dickerson* Court dismissed the defendant's argument as meritless, followed its *McDonald* decision, and held that prosecutions for offenses of breaking and entering committed before the effective date of the amendatory act were to be governed by the terms of the earlier statute. *Dickerson, supra* at 203.

More recently, in *People v Gravedoni,* 172 Mich App 195; 431 NW2d 221 (1988), the Court of Appeals evaluated a situation where, after the defendant had committed an offense, an amendatory act that had the consequence of reducing punishment took effect. Defendant Gravedoni was convicted by

a jury of violating a statute prohibiting fraudulent use of electric service. MCL 750.282; MSA 28.493. The Court of Appeals relied on MCL 8.4a; MSA 2.214 and rejected the defendant's claim that his conviction was invalid because an amendment of that statute increased the dollar amount of services that the prosecution must prove in order to gain a felony conviction. It held that the general saving statute "unambiguously provides that unless there is a specific provision voiding a former law, any actions pending on the effective date of a new law are saved." *Id.* at 197. Thus, the defendant's prosecution, conviction, and sentence under the provisions of the former act were proper.

Finally, we note that several panels of the Michigan Court of Appeals have considered the effect of MCL 8.4a; MSA 2.214 on the amendments at issue in *Schultz* and *Sand*—something the *Schultz* and *Sand* Courts failed to do. They concluded that the general saving statute unambiguously validates a defendant's sentence under the statute in effect when he committed the offense. Therefore, these amendments are not to operate retroactively.[12]

We agree that, by virtue of MCL 8.4a; MSA 2.214, an amendatory act that is silent with respect to whether it should operate prospectively or retrospectively should not be given retroactive effect. MCL 8.4a; MSA 2.214 unambiguously provides:

> The repeal of any statute or part thereof shall *not* have the effect to release or relinquish any penalty . . . incurred under such statute . . . unless the repealing act shall so expressly provide,

---

[12] *People v Jackson,* 179 Mich App 344; 445 NW2d 513 (1989), *People v Arnold,* 181 Mich App 140; 449 NW2d 423 (1989), *People v Becoats,* 181 Mich App 722; 449 NW2d 687 (1989), *People v Marji,* 180 Mich App 525; 447 NW2d 835 (1989), and *People v Romano,* 181 Mich App 204; 448 NW2d 795 (1989).

*and* such statute . . . shall be treated as still re-
maining in force for the purpose of . . . sustaining
any proper . . . prosecution *for the enforcement
of such penalty* . . . . [Emphasis added.]

Thus, the penalty provisions of the statutes in
effect on the dates defendants Schultz and Sand
committed their offenses should govern their sen-
tences.

B

Michigan's general saving clause and its judicial
interpretations are in accord with federal law. The
federal general saving statute, 1 USC 109, is sub-
stantially similar to Michigan's statute and pro-
vides in relevant part:

The repeal of any statute shall not have the
effect to release or extinguish any penalty, forfei-
ture, or liability incurred under such statute, un-
less the repealing Act shall so expressly provide,
and such statute shall be treated as still remaining
in force for the purpose of sustaining any proper
action or prosecution for the enforcement of such
penalty, forfeiture, or liability.

In *Warden v Marrero,* 417 US 653, 660-661; 94 S
Ct 2532; 41 L Ed 2d 383 (1974), reh den 419 US
1014 (1974), the United States Supreme Court
discussed the history and correct interpretation of
§ 109. That Court's detailed history of § 109's en-
actment reveals a history similar to Michigan's
adoption of MCL 8.4a; MSA 2.214. Relevant to our
discussion here, the Court noted that "[c]ommon-
law abatements resulted not only from unequivo-
cal statutory repeals, but also from repeals and re-
enactments with different penalties, whether the
re-enacted legislation increased or decreased the
penalties." *Id.* at 660, citing *Bradley v United
States,* 410 US 605, 607-608; 93 S Ct 1151; 35 L Ed

2d 528 (1973). Thus, § 109 was adopted to avoid the abatement or preclusion of *all* prosecutions that had not proceeded to final judgment. Moreover, the United States Supreme Court pointed out that "the saving clause has been held to bar application of ameliorative criminal sentencing laws repealing harsher ones in force at the time of the commission of an offense." *Marrero* at 661 (citations omitted).

*Marrero* concerned the question whether prohibition of an offender's eligibility for parole, as set out in the statute in effect on the date defendant Marrero committed the underlying offense, is a "penalty" saved from release or extinguishment by § 109 in light of a recent amendatory act making parole an option for certain drug offenders. After concluding that it was such a penalty, the Court held that § 109 saved from repeal the bar of parole eligibility under the former statute in effect at the time defendant committed his offense. *Id.* at 664.

A review of current decisions in other jurisdictions also reveals a similar conclusion that the statute in effect at the date of the offense controls the penalty provision to be applied even where the Legislature subsequently amends the statute and reduces penalties.[13]

C

It is an accepted rule of statutory construction that the Legislature is presumed to act with

---

[13] *State v Gonzales,* 141 Ariz 512; 687 P2d 1267 (1984); *Hunter v State,* 278 Ark 428; 645 SW2d 954 (1983); *Galbraith v State,* 693 P2d 880 (Alas App, 1985); *State v Paradise,* 189 Conn 346; 456 A2d 305 (1983); *Castle v State,* 330 So 2d 10 (Fla, 1976); *Barrett v State,* 183 Ga App 729; 360 SE2d 400 (1987); *Patterson v State,* 532 NE2d 604 (Ind, 1988); *Davis v State,* 446 NE2d 1317 (Ind, 1983); *State v Ramos,* 240 Kan 485; 731 P2d 837 (1987); *State v Armstrong,* 238 Kan 559; 712 P2d 1258 (1986); *State v Narcisse,* 426 So 2d 118 (La, 1983); *State v Johnson,* 429 So 2d 870 (La, 1983); *State v Alley,* 263 A2d 66 (Me, 1970); *Tellis v State,* 84 Nev 587; 445 P2d 938 (1968); *State v Goodbird,* 344 NW2d 483 (ND, 1984).

knowledge of existing law.[14] Therefore, this Court can presume that the Legislature was aware of the construction of MCL 8.4a; MSA 2.214 against retroactive application of criminal penalties when it amended the controlled substance act by 1987 PA 275 and 1988 PA 47.

Our conclusion that the Legislature did not intend these amendatory acts to operate retrospectively is further supported by the fact that the Legislature has in the past explicitly expressed its desire that certain portions of an amendatory act are to have retroactive effect. For example, under an earlier version of the controlled substance act, 1971 PA 196, § 61,[15] the Legislature created two exceptions to the general rule against retroactive application of statutes. "First, defendants not sentenced by the effective date of the statute [could] receive the benefit of the decreased sentences contained therein. Second, defendants sentenced prior to the effective date of the statute" were to receive the benefit of parole board review of their sentences and further that that board's recommendations were to be sent to the Governor with respect to commutation of certain sentences.[16] Thus, it is evident that when the Legislature intends to make an amendatory act reducing penalties retroactive in effect it does so expressly.

D

Defendants Schultz and Sand urge this Court to abandon the above-stated, well-established rule and adopt the rule followed in a number of other

---

[14] *Longstreth v Gensel,* 423 Mich 675, 691; 377 NW2d 804 (1985); *Southeastern Michigan Transportation Authority v Dep't of Treasury,* 122 Mich App 92; 333 NW2d 14 (1982). See 2A Sands, Sutherland Statutory Construction (4th ed), § 47.13, p 150.

[15] MCL 335.361; MSA 18.1071(61).

[16] *People v Osteen,* n 9 *supra* at 413-414.

jurisdictions.[17] That rule states, despite the presence of a general saving statute: where an amendatory act reduces the punishment to be imposed for an offense committed before its effective date, but before final judgment, the defendant may be punished under the new law. This contrary judicially adopted rule is premised on "inferred" legislative intent and the presumption that when the Legislature amends a statute by lessening the punishment, "it has obviously expressly determined that its former penalty was too severe and that a lighter punishment is proper [and] should apply to every case to which it constitutionally could apply." *In re Estrada,* 63 Cal 2d 740, 745; 48 Cal Rptr 172; 408 P2d 948 (1965). This judge-made rule is further premised upon the contention that nothing is gained but vengeance when the courts impose the more severe penalty. *Id.*

Despite this view, our consideration of the history of MCL 8.4a; MSA 2.214 gives us no basis for inferring such an intention on the part of the Legislature. It is our view that our general saving statute is to be construed in the same manner as the federal general saving statute. MCL 8.4a; MSA 2.214 is evidence of the legislative intent to preserve both the prosecution and punishment provisions of the statute in effect at the time an offense was committed.

The Court of Appeals in *Schultz* raised an argument similar to that adopted in *Estrada* when it erroneously concluded that because the Legislature revised the controlled substance act by reducing the mandatory minimum penalties and gave the sentencing court discretion to depart from the

---

[17] *In re Estrada,* 63 Cal 2d 740; 48 Cal Rptr 172; 408 P2d 948 (1965); *People v Oliver,* 1 NY2d 152; 151 NYS2d 367; 134 NE2d 197 (1956); *Belt v Turner,* 25 Utah 2d 230; 479 P2d 791 (1971), aff'd on reh 25 Utah 2d 380; 483 P2d 425 (1971).

mandatory minimums for substantial and compelling reasons, it was the Legislature's intent "to make the punishment more proportionate to the crime and the criminal and [was] a tacit admission that such was previously not the case." *Schultz, supra* at 687. Defendant Sand also raises the argument that the Legislature adopted the amendments to correct the harshness and severity of the prior act's penalty provisions.

In fact, a review of the legislative history of the amendatory acts at issue here reveals the opposite. Both 1987 PA 275 and 1988 PA 47 were enacted out of a concern that the penalties for controlled substance offenses be *strengthened.* Provisions were added mandating prison terms for offenses involving even small quantities of illegal drugs so as to preclude drug dealers from avoiding imprisonment by selling only small quantities upon initial contact with a buyer who later turned out to be an undercover narcotics officer. The amendments also removed the option of lifetime probation for larger quantities.[18] Lastly, it addressed the concern of some that the mandatory minimum terms were too rigid by allowing for a departure by the sentencing court if it finds "on the record that there were substantial and compelling reasons to do so."[19] Senate Analysis, SB 598, 600, 603,

---

[18] MCL 333.7401; MSA 14.15(7401), as amended by 1987 PA 275, and MCL 333.7403; MSA 14.15(7403), as amended by 1988 PA 47. See Senate Analysis, SB 598, 600, 603, 610, Third Analysis, August 29, 1988. See also *People v Regelin,* 178 Mich App 128; 443 NW2d 436 (1989).

[19] The "substantial and compelling reason" standard requires that the basis for departure be objective and verifiable. In addition, the scope of the sentencing court's discretion to depart from the mandatory minimums is "very limited [and] is substantially reduced from sentencing in other cases." *People v Downey,* 183 Mich App 405, 414; 454 NW2d 235 (1990). See also Ward, *Drug sentences: Reining in knight-errantry,* 68 Mich B J 976-978 (1989) (acknowledges that the purpose of 1987 PA 275 and 1988 PA 47 was to strengthen the sentencing of drug criminals and explains that the sentencing judge's departure discretion is very narrow).

610, Third Analysis, August 29, 1988, p 1.

In addition, a little over one year after the effective date of 1987 PA 275 and 1988 PA 47, the Legislature enacted 1989 PA 143, effective September 28, 1989, which once again amended the penalty provisions of the controlled substance act, reinstating the original mandatory minimum prison terms for MCL 333.7401; MSA 14.15(7401) and MCL 333.7403; MSA 14.15(7403).

Thus, a review of the legislative history of MCL 333.7401; MSA 14.15(7401) and MCL 333.7403; MSA 14.15(7403) does *not* reveal a tacit admission by the Legislature that the mandatory minimum terms in effect when the underlying offenses in *Schultz* and *Sand* were committed were disproportionate to the offenses. In light of the purpose and history of the relevant amendatory acts, and in the absence of any expression to the contrary, we find that the Legislature intended, by virtue of the general saving statute, that the statute in effect at the time an offense is committed is to govern the issue of sentencing. It is a legislative prerogative to prescribe sentences, and absent constitutional defects, the courts must carry out the legislative mandate.[20]

Finally, the *Estrada* rule is a judge-created rule of construction which results in a lowered penalty in every case unless the Legislature expressly provides otherwise. Such an analysis is squarely prohibited by MCL 8.4a; MSA 2.214. That section

---

[20] *Attorney General v Recorder's Court Judge,* 341 Mich 461; 67 NW2d 708 (1954).

We agree with the lead opinion that the "constitutional authority to determine sentencing policies rests exclusively with the Legislature and not the courts." (*Ante,* p 531.) The lead opinion, however, fails to observe this principle by enunciating a rule that allows the courts to retroactively apply a statutory amendment affecting sentencing and ignores the fact that when the Legislature desires retroactive application of sentencing changes it has plainly and expressly stated its intent. See n 15 and accompanying text.

of the code is law enacted by the Legislature that provides that the penalty for any crime is the penalty in effect at the time of the crime unless the Legislature expressly provides otherwise. There is little left to infer. The Legislature has told us how silence in an amendatory act and retroactive application of a lowered penalty is to be construed. Application of the *Estrada* rule would violate an express legislative enactment.[21]

E

There are several policy reasons why the penalty provisions in effect when the offense is committed should govern sentencing rather than those in effect at the date of sentencing or some later date. First, such a policy expresses the basic notice provisions that ex post facto principles represent. Just as the state will not be heard to surprise a defendant with an enhanced penalty, a defendant

---

[21] Defendant Sand argues that this Court is obligated under the rule of lenity to allow resentencing under 1987 PA 275. We reject that argument for two reasons. First, the rule of lenity is a general rule of construction that states that ambiguity in a penal statute is to be resolved against imposition of a harsher penalty. As pointed out in *People v Smith,* 423 Mich 427, 446; 378 NW2d 384 (1985): "that rule applies only in the absence of a firm indication of legislative intent." As discussed above, we find the legislative intent against retroactive application of 1987 PA 275 is unambiguous.

Second, the rule of lenity is premised upon the rule of statutory construction that penal statutes are to be strictly construed. 3 Sands, Sutherland Statutory Construction (4th ed), § 59.04, pp 25-28. This Court recently pointed out, however, that under Michigan's Penal Code, MCL 750.2; MSA 28.192, it is expressly provided that " 'The rule that a penal statute is to be strictly construed shall *not* apply to this act or any of the provisions thereof.' " *People v Hill,* 433 Mich 464, 473; 446 NW2d 140 (1989). (Emphasis added.) We acknowledge that MCL 333.7401; MSA 14.15(7401) and MCL 333.7403; MSA 14.15(7403), although penal in nature, are contained in the Public Health Code and not the Penal Code. However, pertinent sections of the Public Health Code state they are to be construed to be consistent with applicable federal and state law and shall be liberally construed for the protection of the health, safety, and welfare of the people of this state. MCL 333.1111; MSA 14.15(1111).

will not be heard to say he is surprised at the punishment that attended his conduct at the time he committed the act. Second, concerns for fairness as between similarly situated defendants dictate this result. Delays in the criminal system are inevitable. By focusing on the sentencing statute in effect at the date of the underlying offense, we achieve more evenhanded results. For example, three defendants who commit the same crime on the same day will be subject to identical penalties even if one pleads guilty, one delays sentencing, and one appeals. Adoption of a contrary rule would have "the effect of encouraging appeals and delays not related to guilt or innocence but employed solely to keep open the possibility of subsequent windfalls . . . ."[22] In other words, such a rule would reward delays in the criminal process whether occasioned intentionally or caused by the fortuity of trial or appellate backlogs.[23]

In addition, this rule is justified because it attempts to achieve the recognized goal of general societal deterrence of criminal activity by making the threat of punishment as concrete as possible.[24]

I agree wholeheartedly with the trial judge in the *Schultz* case. A fair sentence cannot be cap-

[22] *In re Estrada, supra* at 753 (Burke, J., dissenting). See Doren, *Criminal law—retrospective application of statute reducing penalty,* 18 Wayne L R 1157, 1168-1170 (1972); note, *Today's law and yesterday's crime: Retroactive application of ameliorative criminal legislation,* 121 U Pa L R 120, 138 (1972).

[23] See *Belt v Turner,* n 17 *supra,* as a prime example of this. There the defendant violated his probation, left the jurisdiction, and did not return for sentencing until after the effective date of an ameliorative act only to gain the benefit of that act despite his wrongdoing. See also *Today's Law,* n 22 *supra* at 137.

[24] As Justice Burke emphasized in his dissenting opinion in *Estrada, supra* at 753: "The certainty of punishment has always been considered one of the strongest deterrents to crime. That certainty is best afforded when the punishment described by the law existent at the time of commission of the crime is promptly and inexorably meted out to those who violate the law." See also Doren, n 22 *supra,* at 1161-1162.

tured in a fixed presumptive sentence. But I, like she, "am duty bound to follow that law."

## CONCLUSION

Legislative intent controls whether a penal statute is to be given prospective or retroactive operation. The Legislature has expressed its intent in MCL 8.4a; MSA 2.214 that, absent express language to the contrary, it wishes to preserve the existing penalty for those proceedings where the underlying offense occurred prior to the effective date of the amendatory act. Had the Legislature intended these amendatory acts to operate retroactively, it would have expressly stated that intent as it has in the past. In light of the above, we conclude that the Legislature intended 1987 PA 275 and 1988 PA 47 to operate prospectively only. A defendant should be held responsible to the extent of the penalty in effect on the date an offense is committed.

Accordingly, in *People v Schultz*, we would reverse the decision of the Court of Appeals and reinstate the defendant's sentence. In that case, the relevant amendatory act took effect almost two years after defendant Schultz committed his offense and almost one year after the date he was tried, convicted, and sentenced.

In *People v Sand*, we would reverse the decision of the Court of Appeals and reinstate the defendant's sentence. In this case, the amendatory act took effect a little over two years after defendant Sand committed the underlying offense.

RILEY, C.J., and GRIFFIN, J., concurred with BRICKLEY, J.